**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0800n.06

No. 09-2147

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Dec 30, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| THOMAS L. FULLER, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Eastern |
| JERI A. SHERRY, Warden, | ) | District of Michigan |
| | ) | |
| Respondent-Appellee. | ) | |

Before:    BOGGS and MCKEAGUE, Circuit Judges; and QUIST, District Judge[*]

BOGGS, Circuit Judge.  Thomas Fuller appeals the district court's denial of his petition for a writ of habeas corpus.  Fuller was appointed new defense counsel one hour and twenty-eight minutes before jury selection began in his state criminal trial.  Fuller argues that he is entitled to a presumption that his counsel was constitutionally ineffective, because it is unlikely that any attorney could provide competent representation with so little preparation time.  The presumption of ineffectiveness, however, is limited to particularly egregious circumstances.  Because Fuller's case was fairly straightforward, and witnesses and evidence had been identified by his previous counsel, we decline to apply the presumption and affirm the denial of Fuller's petition.

---

[*]The Hon. Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

I

The facts of Fuller's case are taken from the transcript of his jury trial, held on January 21–22, 2004. Fuller was tried in Tuscola County Circuit Court, Michigan, on four counts of resisting and obstructing a police officer, one count of criminal sexual conduct in the fourth degree, and one count of marijuana possession. The counts stemmed from an incident that took place at a grocery store on September 3, 2003.

The morning of the trial, Fuller requested the replacement of his appointed counsel, Jill Schmidt. The court granted Fuller's request and immediately appointed defense attorney Amy Gierhart, present in the courtroom on another case, to represent Fuller. After a one hour and twenty-eight minute recess during which Gierhart conferred with Fuller, jury selection began. Gierhart asked the jurors whether they understood the concept of "reasonable doubt" and that the burden of proof lay with the prosecution, and she exercised five peremptory challenges.

When the jury was excused for a lunch break, Gierhart requested an adjournment and relayed to the court a number of requests that Fuller had made during their discussion, including requests for discovery of the criminal history of the witnesses, funds for a private investigator, "a motion filed regarding prior conduct of the complaining officer," and videotapes of the store, jail, and police car. Fuller also sought two additional witnesses: a police detective and the store owner. Gierhart admitted that she did not know the purpose of some of the requests. She also made a motion in limine to exclude evidence that Fuller was on parole, which was granted, and informed the court that Fuller was notified of a plea offer. The court then recessed for an hour.

After the recess, Gierhart asked the court for an adjournment, stating, "[B]ased on the circumstances, I have had no time to prepare[.] Mr. Fuller's requesting adjournment based on [those] circumstances, as well as the other things that have come to my attention today." The court responded that none of Fuller's discovery-related motions had been properly filed and denied them. In response to Gierhart's request for an adjournment, it stated:

> The Court is satisfied that counsel representing the defendant is competent and can provide adequate representation.
> Counsel for the defendant was aware of jury trial, was preparing on another case for jury selection today. So I'm satisfied that counsel certainly was prepared for jury selection in this case.
> There have been a number of discovery requests that I really quite frankly don't even understand how it would be logical, or relevant, or material, or admissible in this case.
> Defense counsel ready? I'm ready to try the case. Bring in the jury, we'll have opening statements.

The trial then began.

The prosecution presented six witnesses. The first, Jill Brady, testified that Fuller had visited the market where she worked several times on September 3, 2003. She stated that Fuller stared at her and made sexual comments. After Fuller's third visit, Brady phoned the sheriff's department because she felt uncomfortable that Fuller was still outside. She alleged that Fuller returned and asked her to approach the counter, and that when she did so, he lifted his arm and brushed her breast with the back of his hand. She stated that she did not believe the contact was accidental and that Fuller smiled. Shortly after Fuller left the store, Sheriff's Deputy Chris Rogner arrived at the market, and Brady told him that Fuller was walking down the road. On cross-examination, Gierhart's only question to Brady was what brand of cigarettes Fuller normally purchased.

Next, Deputy Rogner testified that when he responded to Brady's call, she told him that Fuller had touched her and made sexual innuendos. Rogner left in pursuit of Fuller, who he saw dump some items on the hood of a pickup truck and run behind a house. Rogner said he gave Fuller verbal commands to stop, but that Fuller attempted to climb a fence. Rogner testified that, while saying, "stop, police," he continued to pursue Fuller, firing a shot into the ground. Sheriff's Deputy Joshua Herman then arrived. The two officers told Fuller to get on the ground, and when Fuller did not immediately comply, Rogner sprayed him with pepper spray. The officers cuffed Fuller and took him to a patrol car. Fuller then went "relatively willingly." On cross-examination, Gierhart elicited that Rogner did not activate the lights of his police car while pursing Fuller, and that Fuller was given no first aid to treat the effects of the pepper spray.

The third witness, Deputy Herman, confirmed Rogner's account of the arrest. He testified that, when he stopped to assist Rogner, he was driving a marked patrol car and wearing a full uniform. After arresting Fuller, he retrieved the items left by Fuller on the trunk, including a small piece of folded paper containing what appeared to be marijuana. On cross-examination, Gierhart had Herman confirm that Fuller remained handcuffed during the transport to the jail and did not attempt to get out of the car or strike the officers. During a twenty-minute recess, Gierhart moved for a mistrial because Herman had testified that there was a parole warrant for Fuller's arrest, in violation of the order in limine. The court took the request under advisement.

The next witness, Herbert Terbush, testified that, while picking peaches at a neighbor's house, he saw "an officer chasing a fellow." He stated that Fuller "struggled" with the officers, who gave him "repeated commands." Gierhart did not cross-examine Terbush.

The final two witnesses testified regarding the handling of the substance retrieved by Herman and the laboratory tests confirming that it was marijuana. The prosecution then rested.

Gierhart made an opening statement in which she reminded the jury that the prosecution had to prove each element of each count beyond a reasonable doubt. She stated that Fuller would testify that his contact with Brady was accidental.

Fuller, the sole defense witness, testified that he went to the market three times on September 3, 2003. He first went in to buy beer, then ran out of gas and returned to look for a gas can, then entered the store again to buy cigarettes. He described his contact with Brady as an accidental bump that happened while he was reaching for the cigarettes, which were kept above the counter behind which she was working. He left the store, he said, because Brady had a strange look on her face and, knowing he was still on parole, he wanted no trouble. Fuller said that he walked down the road to a friend's house, where he heard a car roar up. He began to run and continued running when he heard a gunshot, fearing for his life. He claimed that he did not see the first police car or Deputy Rogner and did not realize he was being chased by an officer until Deputy Herman arrived. Fuller said he did not immediately get on the ground when told to do so because he was afraid. Gierhart asked him if he had resisted the officers, and he claimed he had not. On cross-examination, he admitted the marijuana possession.

Deputy Rogner, called as a rebuttal witness, testified that Fuller looked "directly" at him during the chase. Gierhart, on cross, again asked whether Rogner used flashing lights or sirens when he encountered Fuller, and Rogner confirmed that he did not. The court then recessed for the day. The only exhibits in the case were the marijuana and the lab report.

The next morning, both sides gave closing arguments. Gierhart emphasized that Fuller had not intentionally made contact with Brady, that Deputy Rogner did not use his lights and siren while pursuing Fuller, and that Fuller was not told by the officers that he was under arrest. The jury reached a verdict that afternoon, voting to convict Fuller of criminal sexual conduct in the fourth degree, possession of marijuana, and two of the four counts of resisting and obstructing a police officer. Fuller was sentenced as a habitual offender to one year in prison for the marijuana conviction and concurrent terms of five-and-a-half to fifteen years in prison for the other convictions.

On state appellate review, Fuller argued that he was denied the effective assistance of counsel guaranteed by the Sixth Amendment because his attorney had so little time to confer with him before the trial. In his brief on appeal, Fuller relied on *Powell v. Alabama*, 287 U.S. 45 (1932), *Morris v. Slappy*, 461 U.S. 1 (1983), and *United States v. Cronic*, 466 U.S. 648 (1984). He explained:

> The argument in this case is not that Ms. Gierhart did anything specifically that resulted in ineffective assistance of counsel; the argument is that no attorney placed in her position could have rendered Mr. Fuller effective assistance of counsel. A line of cases beginning with [*Cronic*] deals with this exact situation.

Quoting *Bell v. Cone*, 535 U.S. 685, 696 (2002), Fuller argued that his case fell into a category in which a presumption of prejudice applies, because counsel was placed in "circumstances in which competent counsel very likely could not render assistance."

The Michigan Court of Appeals rejected Fuller's ineffective assistance claim. The court did not cite *Cronic*, relying instead on *Strickland v. Washington*, 466 U.S. 668 (1984):

> In order to show that counsel was ineffective, defendant must show that counsel's "representation fell below an objective standard of reasonableness," [*Strickland*, 466 U.S. at 688], and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

> at 694. . . . Defendant cannot overcome the presumption that his counsel was effective or demonstrate that he was prejudiced by counsel's limited time to prepare. Defendant's trial attorney fully participated in jury voir dire, effectively cross-examined the prosecution's witnesses, presented defendant's witnesses, and argued for acquittal before the jury. We also note that defendant was acquitted of two other charges of resisting and obstructing. Moreover, the case was factually very simple and straightforward.

*People v. Fuller*, No. 255961, 2005 WL 3076931, at *2 (Mich. Ct. App. Nov. 17, 2005) (per curiam). The Michigan Supreme Court denied leave to appeal. *People v. Fuller*, 721 N.W.2d 600 (Mich. 2006).

On November 6, 2006, Fuller filed a federal habeas petition. He again alleged that the trial court violated his Sixth Amendment right to counsel by appointing him new counsel on the day of trial and denying his motion for a continuance, and that *Cronic*, not *Strickland*, governed his claim. The district court acknowledged that, under *Cronic*, there are circumstances in which prejudice is presumed. In Fuller's case, however, it found that the circumstances "were such that prejudice to him could have [been] and [was] avoided by competent counsel." The court thus held that Fuller's claim was governed by *Strickland*, and that because Fuller had failed to allege any "specific errors that affected his ability to receive a fair trial," he "was not deprived of his right to effective assistance of counsel." Fuller filed this timely appeal.

II

The question before this court is whether, under *Cronic*, Fuller is entitled to a presumption of ineffective assistance of counsel in violation of the Sixth Amendment. Fuller's collateral attack on his state court conviction is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"). Under AEDPA, federal courts

cannot grant a habeas petition for any claim that a state court adjudicated on the merits unless the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *see also Miller v. Francis*, 269 F.3d 609, 614 (6th Cir. 2001).

In this case, Fuller claimed that his counsel was per se ineffective, under *Cronic*. The Michigan Court of Appeals did not address whether *Cronic* applied to Fuller's situation. *See Fuller*, 2005 WL 3076931. Rather, the court adjudicated the merits of Fuller's ineffective assistance claim using the *Strickland* standard. *Id*. at *2. As the state court did not articulate its reasoning in rejecting *Cronic*, we must decide whether its refusal to apply *Cronic*'s presumption of prejudice was "contrary to . . . clearly established Federal law." Such is the case "'if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Joseph v. Coyle*, 469 F.3d 441, 450 (6th Cir. 2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–6 (2000)).

III

Courts typically review a defendant's claim that he was denied effective assistance of counsel under the standard set forth in *Strickland*, which requires him to make a showing of both deficient performance by counsel and actual prejudice to his case. *Strickland*, 466 U.S. at 687. But in certain circumstances, courts may dispense with the *Strickland* test: a defendant is entitled to a presumption

of prejudice where circumstances arising in a criminal prosecution "are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 658. The Supreme Court identified three situations where a defendant is entitled to this presumption: (1) the "complete denial of counsel," including situations where counsel was absent at a "critical stage" of the proceedings; (2) situations where defense counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing;" and (3) situations where "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate." *Id.* at 659–60; *see also Bell*, 535 U.S. at 695–96 (reaffirming *Cronic*'s holding).

Fuller argues that his case falls within the third category of *Cronic*. Appellant's Br. at 33. Gierhart, he contends, was "put into a position where she could not provide competent representation due to the state trial court's refusal to grant a continuance." *Id.* at 47. Because Gierhart "was afforded insufficient time to responsibly represent her client or prepare for trial," Fuller argues that he is entitled "to the presumption of prejudice under *Cronic*." *Id.* at 41.

Under the third category of *Cronic*, the presumption of prejudice applies in limited, egregious circumstances. It is warranted "only when surrounding circumstances justify" it, not merely because counsel was belatedly appointed and the court refused to grant additional time to prepare. *Cronic*, 466 U.S. at 661–62. In *Cronic*, the Court noted five factors "relevant to an evaluation of a lawyer's effectiveness in a particular case," *id.* at 663, without stating that all of the criteria are required or that these are the only factors a court may consider. These factors were: "(1) the time afforded for investigation and preparation; (2) the experience of counsel; (3) the gravity of

the charge; (4) the complexity of possible defenses; and (5) the accessibility of witnesses to counsel." *Id.* at 652 (citations omitted). For the presumption to apply, the Court stated, the analysis of the criteria must "demonstrate that counsel failed to function in any meaningful sense as the Government's adversary." *Id.* at 666. Otherwise, a defendant must point to specific errors by counsel in order to make out an ineffective assistance claim under *Strickland. Ibid.*

The *Cronic* Court cited *Powell* as an example of a case in which the presumption was warranted. That 1932 case involved nine black defendants indicted for a capital offense who had no representation at all until the morning of their trial. The Supreme Court found this situation so egregious that, without examining counsel's actual performance, it concluded that the trial was "inherently unfair." 466 U.S. at 660–61 (citing *Powell*, 287 U.S. at 53). The Court also noted in *Cronic* its failure to apply a presumption of ineffectiveness in *Avery v. Alabama*, 308 U.S. 444 (1940), in which counsel was appointed three days before the start of a capital trial, because it found that evidence and witnesses were readily accessible to counsel. *Cronic*, 466 U.S. at 450–53.

*Powell* and *Avery* indicate that the exception to *Strickland* applies only in rare circumstances. The Court made that point again in *Bell*. Addressing an argument that the second category of *Cronic* applied, it stated: "When we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete." 535 U.S. at 696–97. This court, too, has stated that *Cronic* applies "only where the constructive denial of counsel and the associated collapse of the adversarial system is [e]minently clear." *Moss v. Hofbauer*, 286 F.3d 851, 861 (6th Cir. 2002) (declining to apply *Cronic*'s second category when defense counsel failed to cross-examine key eyewitnesses).

Apart from in *Powell*, the Supreme Court has never found a presumption of ineffectiveness warranted under the third category of *Cronic*. Our Circuit, however, has applied the presumption in a trio of cases involving the late appointment of counsel. *Hunt v. Mitchell* involved a defendant charged with felonious assault and domestic violence who was appointed counsel the day of the voir dire; his trial began the next day. 261 F.3d 575, 578–79 (6th Cir. 2001). The judge gave Hunt the choice of waiving his right to a speedy trial or proceeding to trial immediately. *Id.* at 578. Hunt's counsel expressed concern about inadequate time to prepare and asked for "ten minutes" to speak to his new client, but no time to consult was allowed, and opening statements and the first three prosecution witnesses were presented the next day. *Id.* at 579. Counsel was thus required to proceed to voir dire and then to trial "without ever discussing the case with his client and without conducting any discovery or independent investigation of the facts." *Id.* at 583. We held that the state court had failed to apply clearly established law in holding that Hunt's counsel was not per se ineffective. No attorney could provide effective counsel without an opportunity for pre-trial consultation. *Ibid.*

In *Mitchell v. Mason*, 325 F.3d 732 (6th Cir. 2003), this court held that the presumption applied where defense counsel did not consult with the defendant, facing a charge of first-degree murder, during the pretrial period because he was suspended from practice during the month before the trial. Although the defendant repeatedly notified the trial court that his attorney had never visited him in prison, the court denied a motion for new counsel, and the attorney appeared on the defendant's behalf on the first day of jury selection. *Id.* at 735–36. Because the attorney met with the defendant "for no more than six minutes" before trial, *id.* at 742, this court concluded that the

defendant had been completely denied counsel during a "critical stage" of the proceedings, and that the case fell within the first category of *Cronic*. *Id.* at 748.

In *United States v. Morris*, 470 F.3d 596 (6th Cir. 2006), this court found the *Cronic* presumption applied where a defendant met with his appointed counsel for only a few minutes, in a public and crowded "bull pen" cell, before being required to decide whether to plead guilty to state charges or risk facing more serious federal charges. *Id.* at 598-99. The attorney had not received complete discovery on the case, was not aware of the defendant's criminal record, and was misinformed about the federal guideline range the defendant would face. *Id.* at 599, 602. We held that the situation fell within *Cronic*'s third category, because no competent counsel could render effective assistance absent more time to consult and prepare. *Id.* at 602.

Our analysis is also guided by several cases in which the presumption was held not to apply. The Supreme Court has declined to apply it on several occasions. In *Chambers v. Maroney*, 399 U.S. 42 (1970), a defendant was represented by one legal aid attorney at his first trial, but by a new attorney from the same organization at his retrial. The latter did not confer with the defendant until minutes before the trial began and was not entirely familiar with the case. *Id.* at 53. The Court did not find a presumption of prejudice. It refused "to fashion a per se rule requiring reversal of every conviction following tardy appointment of counsel." *Id.* at 54. In *Morris v. Slappy*, the Court found that a state trial court had not abused its discretion by denying a continuance when substitute counsel had seven days to prepare and multiple opportunities to confer with previous counsel, and told the court that he was prepared for trial. 461 U.S. at 11–12. And in *Cronic* itself, the Court found that no presumption of prejudice applied when a young real estate lawyer with no trial experience was

appointed to represent a defendant indicted on complicated federal mail fraud charges and given only twenty-five days to prepare for trial. 466 U.S. at 649–52. The Court noted that the circumstances were made less egregious because the underlying historical facts in the case were not in dispute, and the only real issue for the jury was whether the defendant had acted with intent. *Id.* at 663–65.

In this case, Fuller emphasizes that Gierhart was appointed as his attorney only eighty-eight minutes before the voir dire. Appellant's Br. at 44–45. This was considerably less "than the 25 days at issue in *Cronic*, the six days at issue in *Slappy*, and the three days at issue in *Avery*," and "virtually precluded [Gierhart] from any preparation, investigation, or even meaningful consultation with her client other than a presumed cursory review of documents." *Ibid.* Fuller contends that this time frame makes his case more akin to *Hunt* than to *Cronic*, *Slappy* and *Avery*. *Id.* at 45.

Although this short time for preparation is indeed striking, the Supreme Court has made it clear that tardy appointment of counsel alone does not warrant the application of the per se rule. *Chambers*, 399 U.S. at 54. As previously mentioned, *Cronic* identified a number of other factors relevant to determining whether the presumption of ineffectiveness applies: "(1) the time afforded for investigation and preparation; (2) the experience of counsel; (3) the gravity of the charge; (4) the complexity of possible defenses; and (5) the accessibility of witnesses to counsel." 466 U.S. at 652 (citations omitted). When each of these factors is considered, the late appointment of counsel in Fuller's case appears less troubling.

With respect to the first factor, time for investigation and preparation, we acknowledge that Gierhart was forced to meet with a new client, discuss a potential plea, consider motions and discovery requests, review discovery documents, and read the preliminary examination transcript,

all within eighty-eight minutes. She then had approximately one hour between jury selection and the beginning of testimony to prepare for trial. All six of the witnesses in the case testified on the day that she was appointed; only closing arguments were made the second day of the trial. Gierhart obviously had no time for any independent investigation of the case and probably did not have time to review all of the discovery. She had even less time to prepare than the attorney in *Hunt* had, as he was appointed the day before the actual trial began. Gierhart also told the judge that she was not prepared to try the case, a fact that distinguishes Fuller's case from *Slappy*, in which the attorney indicated that he was prepared to go to trial.

On the other hand, Fuller's case differs in a crucial respect from *Hunt* and *Mitchell*, in which the late appointment of counsel left defendants completely unrepresented during the pre-trial period. In *Hunt*, the defense attorney had virtually no opportunity to consult with his client before trial or conduct any investigation. 261 F.3d at 583. In *Mitchell*, similarly, there was essentially no representation during the pre-trial period. 325 F.3d at 741. Here, Fuller was never completely without counsel. He was represented by Schmidt during his arraignment and the preliminary examination. Presumably, Schmidt investigated Fuller's case and would have identified additional evidence and witnesses were any available. Although Fuller made requests for additional discovery the day of trial, Schmidt may have been aware of his requests and may have determined that no discovery-related motions were necessary. Indeed, given that the case turned largely on Fuller's intent, it seems unlikely that additional investigation could have uncovered useful evidence.

We note that Gierhart may not have had an opportunity to actually consult with Schmidt. Thus, it would be improper to conclude that Gierhart benefitted from all of Schmidt's trial

preparation. Gierhart had to rely mainly on her brief conversation with Fuller, the police reports, and the transcript of the preliminary exam, during which prosecution witnesses had been cross-examined by Schmidt. Still, given that witnesses and evidence had already been identified, and given that the preliminary examination transcript suggested the witnesses' likely testimony, the parameters of Fuller's case were largely established when Gierhart took over. Unlike Hunt and Mitchell's attorneys, she did not have to go to trial entirely unprepared.

With respect to the second factor, Gierhart was an experienced criminal attorney. Nothing suggests that she was not competent—even with little preparation—to handle the voir dire and the evidentiary matters and objections that arose during the trial. She was also equipped to argue to the jury that the prosecution had not met its burden of proof.

Third, while Fuller received a lengthy sentence for criminal sexual conduct and resisting and obstructing a police officer, this sentence was more reflective of his habitual-offender status than the gravity of the charges he faced. Those charges were less serious than those in *Hunt* (felonious assault and domestic violence), *Mitchell* (first degree murder), and *Powell* (capital murder).

Fourth, Fuller's case was relatively uncomplicated. There were six witnesses and two exhibits. The preliminary examination transcript was only thirty-seven pages long. The case essentially turned on credibility: whether the jury believed that Fuller had not intended to touch Brady or to resist arrest. In *Cronic*, the Supreme Court noted that a defense lawyer's task was less burdensome when the only real issue at trial was the defendant's intent. 466 U.S. at 663–65. Thus, Gierhart needed little time to assemble a defense theory.

Finally, because Schmidt was responsible for investigating Fuller's case, the relevant witnesses were identified and prepared for trial before Gierhart was appointed. Schmidt presumably would have identified and prepared additional defense witnesses were any available.

Although in some circumstances, appointing new defense counsel on the day of trial would so damage the integrity of a criminal trial that a presumption of ineffectiveness would be justified, that was not so here. Because Fuller's case was fairly straightforward, and witnesses and evidence had already been identified, it was possible for an experienced criminal attorney like Gierhart to provide Fuller with an effective defense, even when she had little time to speak with her new client and review discovery materials. Fuller's trial was not stripped "of all its integrity so that a per-se rule of prejudice is justified without resort to an examination of the actual circumstances of the case." *Glover v. Miro*, 262 F.3d 268, 278 (4th Cir. 2001). Thus, the state court's refusal to apply the presumption of prejudice was not contrary to clearly-established Supreme Court precedent. Rather, the state court properly considered, under *Strickland*, Gierhart's actual performance and the prejudice Fuller suffered. Because Fuller has identified no specific errors on Gierhart's part, and Gierhart by all accounts performed effectively, our inquiry is at an end.

IV

Because the presumption of ineffectiveness does not apply in Fuller's case, we AFFIRM the district court's denial of Fuller's petition for a writ of habeas corpus.