IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 5, 2018 Session

### RICO VALES v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 12-01881          Carolyn W. Blackett, Judge**

_____

### No. W2017-02361-CCA-R3-PC
_____

Petitioner, Rico Vales, was convicted by a jury of two counts of aggravated assault by display or use of a deadly weapon and one count of being a felon in possession of a handgun. He received an effective sentence of 15 years. Petitioner sought post-conviction relief, claiming that his trial counsel was ineffective. Following an evidentiary hearing, the post-conviction court denied relief. Having reviewed the record and the briefs of the parties, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Marty B. McAfee, Memphis, Tennessee, for the appellant, Rico Vales.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Paul Goodman, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

*Facts*

The facts underlying Petitioner's convictions were summarized by a panel of this court on direct appeal. *See State v. Rico Vales*, No. W2014-00048-CCA-R3-CD, 2015 WL 1094667, at *1-4 (Tenn. Crim. App. Mar. 9, 2015), *perm. app. denied* (Tenn. June 11, 2015). On May 30, 2011, Petitioner attended a Memorial Day barbeque at which Petitioner fired two handguns at two other guests at the barbeque following a heated confrontation. Petitioner believed that one of the victims, Delester Quarles, made

inappropriate comments to Petitioner's fiancée, Muszette Davis. The other victim, Ammon Brookins, testified that Petitioner left the party in a black Mercedes and returned later in a black truck. Petitioner exited the truck with a gun in each hand and fired shots at the victims' vehicle. Mr. Brookins acknowledged that several people at the party were playing cards and that he lost money to Petitioner, but he testified that they were just playing for "change out of a coin purse." Mr. Brookins denied that he or Mr. Quarles were intoxicated at the party. Petitioner's fiancée, Ms. Davis, testified that she and Petitioner left the party after Mr. Quarles made an inappropriate comment about her. She testified that they went to a sports bar, where they stayed until 1:15 or 1:30 a.m. and that Petitioner never returned to the party. Petitioner presented testimony from two other alibi witnesses, Darryl White and Kenneth Jennings, who both testified that they saw Petitioner arrive at the sports bar and did not see Petitioner leave the sports bar during the time that the alleged incident occurred. Petitioner did not testify at trial.

### *Post-conviction hearing*

At the post-conviction hearing, Ms. Davis testified that she and Petitioner attended a party at her sister's house on Memorial Day, 2011. Ms. Davis gave largely the same testimony she gave at trial; however, she added that when they arrived, they heard gunshots "like firecrackers going off" in the neighborhood. She testified that people were shooting guns in the air. She also added that at the party, Petitioner played cards with Mr. Quarles and Mr. Brookins and that Petitioner won $450 from Mr. Brookins. She testified that Mr. Quarles and Mr. Brookins were intoxicated. She testified that Mr. Quarles "made some inappropriate remarks" about her, and she told Petitioner that they needed to leave the party. Mr. Brookins became angry and wanted Petitioner to stay and continue playing cards because he wanted a chance to win back his money. Ms. Davis persuaded Petitioner to leave the party "because [she] didn't want an incident." She testified that they left the party around 6:15 p.m. and went to a bar. They stayed at the bar until it closed at approximately 1:30 a.m. She testified that Petitioner's brother, Johnny Vale, and Petitioner's sister and brother-in-law also went to the bar with them. She testified that Johnny Vale returned to the party because he had left his phone there. She testified that he did not get his phone "because he said that there was gunfire going on there, and he was afraid to actually get his phone." Finally, Ms. Davis testified that she and Petitioner had seen Mr. Quarles and Mr. Brookins socially after the incident, and they were friendly with each other.

Ms. Davis also testified that during Petitioner's trial, she encountered juror W.D., whom she later learned served as a juror. Ms. Davis worked for a pediatric group, where W.D. had taken her children "for a long time." W.D. asked Ms. Davis why she was in court, and Ms. Davis told her she was there with Petitioner. Ms. Davis testified that W.D.

told her, "well, don't worry about it. Everything is going to be all right. God put you – God put me here for a reason."

Johnny Vales, Petitioner's brother, testified that he attended the Memorial Day party, left the party after the argument, and went to a bar with Petitioner. He testified that he returned to the party to retrieve his phone. When he returned, he "saw guys shooting pistols" into the air. He returned to the bar, and Petitioner was still there. Mr. Vales testified that he was not able to testify at trial because he was hospitalized at the time. He testified that he was not subpoenaed to testify at trial. On cross-examination, Mr. Vales acknowledged that he had a history of criminal convictions and that he had "a serious problem" with convictions involving dishonesty. He was incarcerated at the time of the post-conviction hearing.

Petitioner testified that when he arrived at the party, shots were being fired into the air to celebrate Memorial Day. He testified that he won approximately $400 to $500 from Mr. Brookins while playing cards but that the argument broke out because Mr. Quarles made an inappropriate comment to Ms. Davis. Petitioner testified that Mr. Quarles was intoxicated. He testified that Mr. Brookins was drinking, but he was not "that intoxicated," because he was still playing cards. Mr. Brookins became angry when Ms. Davis urged Petitioner to leave because Mr. Brookins thought Petitioner "was using that as an excuse to stop gambling with him so he wouldn't get a chance to win his winnings back." Petitioner testified that they left the party sometime around 6:00 p.m. and went to a bar. They stayed at the bar until it closed at 1:00 or 1:30 a.m. Petitioner testified that he had encountered Mr. Quarles and Mr. Brookins since the party, and they were "cordial."

Petitioner testified that he was upset with trial counsel's representation because trial counsel did not subpoena his brother, Johnny Vales, to testify at trial. Counsel requested a continuance, which the trial court denied because Johnny Vales was not under subpoena. Petitioner testified that he prepared a reply brief and gave it to his appellate counsel, but it was rejected because appellate counsel failed to sign it. Petitioner also testified that appellate counsel did not properly litigate the issue of juror misconduct.

On cross-examination, Petitioner testified that "pretty much everybody" at the Memorial Day party was drinking alcohol. Petitioner testified that he left the party after Mr. Quarles made an inappropriate comment to Ms. Davis. He testified that he "really didn't lose [his] temper." Petitioner denied that he returned to the party carrying a gun in each hand. He acknowledged that he discussed with trial counsel whether he should testify at trial and that trial counsel advised him that his prior criminal history could be used to impeach him. Petitioner testified that he "chose to remain silent."

- 3 -

Petitioner testified that he believed that improper juror contact affected the outcome of his trial. He testified, "I don't know whether [the juror] spoke to other jurors about that she know [sic] Ms. Davis know [sic] me or the feelings she had toward Ms. Davis or what."

Trial counsel testified that he had been practicing criminal law since 1981. Trial counsel testified that he expected Johnny Vales to testify at trial. He testified that he did not subpoena Johnny Vales because he had always attended court in support of Petitioner. Trial counsel testified that Johnny Vales was unavailable to testify at trial because he was hospitalized. Trial counsel requested a continuance, which the trial court denied because Johnny Vales was not under a subpoena. Trial counsel had a subpoena served on Johnny Vales in the hospital. Trial counsel testified Johnny Vales' criminal history did not deter him from wanting to call him as a witness at Petitioner's trial.

Trial counsel testified that he received an email from Ms. Davis after Petitioner's trial. In the email, Ms. Davis told him that she had spoken to juror W.D. during deliberations. Trial counsel included this information in an amended motion for new trial. Trial counsel testified that he negotiated an agreed upon effective sentence of 15 years with a 45 percent release eligibility. Trial counsel testified that Petitioner's sentence exposure was 36 years with a 60 percent release eligibility. Trial counsel testified that prior to trial, he had negotiated "a[n] 11/29 up front probation offer," but Petitioner insisted on going to trial. Petitioner maintained that he did not commit the offenses.

On cross-examination, trial counsel acknowledged that in Mr. Quarles' statement to police, Mr. Quarles stated that his truck was not struck by bullets. Trial counsel agreed that it would have benefitted Petitioner's case to present proof at trial that supported a theory that the victims fabricated the story in retaliation for Petitioner having won money from Mr. Brookins. Trial counsel testified, "[m]y theory would have been that [Petitioner] wasn't there. Now, if you're talking about a theory that he wasn't there and they're making this up, then I would certainly argue the unlikelihood that [Petitioner] would be close to something as big as a truck with two guns and not be able to hit it." Trial counsel testified that Johnny Vales' testimony would have corroborated other testimony and would have supported the defense theory.

*Analysis*

Petitioner contends that his trial counsel was ineffective for: 1) failing to issue a subpoena to his brother, Johnny Vales; and 2) failing to adequately impeach the

testimony of Delester Quarles and Ammon Brookins. He contends that appellate counsel was ineffective for failing to properly present the issue of juror bias on appeal.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f); *see Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. *Id*. However, we review the post-conviction court's application of the law to its factual findings de novo with no presumption of correctness. *Id*. at 457.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. *Dellinger*, 279 S.W.3d at 293 (citing U.S. Const. amend. VI; *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Petitioner contends that trial counsel's assistance was ineffective for failing to subpoena Johnny Vales before trial. He asserts that we should presume prejudice in this case under the standard set forth in *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 659-60 (1984). A reviewing court will presume prejudice to an accused's right to counsel

only when there has been the complete deprivation of counsel at a critical stage of the proceedings, a complete failure to subject the State's case to adversarial testing, or under circumstances of such magnitude that no attorney could provide effective assistance. *Id.*, 466 U.S. at 659-60. Petitioner argues that his claim of ineffective assistance of counsel fits within the third scenario identified in *Cronic* because trial counsel "was put into a position where even as a fully competent attorney; his assistance was rendered ineffective" by the trial court's denial of a continuance.

The State asserts that Petitioner has waived consideration of this issue under *Cronic* because he did not assert it in either of his post-conviction petitions, but rather Petitioner relied solely on the provisions of *Strickland*. We agree with the State. Petitioner did not raise this claim under *Cronic* in his original or amended petition for post-conviction relief, nor did Petitioner argue it to the post-conviction court at the evidentiary hearing. As such, this claim is waived. *See* T.C.A. § 40-30-106(d); *State v. Alder*, 71 S.W.3d 299, 303 (Tenn. Crim. App. 2001); *State v. Alvarado*, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996).

However, notwithstanding waiver, Petitioner's claim is without merit. Petitioner argues that the trial court's denial of a continuance to allow Vales to testify should amount to a presumption of prejudice. The *Cronic* court noted that not "every refusal to postpone a criminal trial" will "give rise to such a presumption." *Cronic*, 466 U.S. at 661; *see also Wiley v. State*, No. M2012-00158-CCA-R3-PC, 2013 WL 57870, at *21 (Tenn. Crim. App. Jan 7, 2013), *perm. app. denied* (Tenn. June 12, 2013). "Under the third category of *Cronic*, the presumption of prejudice applies in limited, egregious circumstances." *Fuller v. Sherry*, 405 F. App'x 980, 985 (6th Cir. 2010). This is not a case in which egregious circumstances, such as those present in *Powell v. Alabama*, the only case where the United States Supreme Court has found a presumption of prejudice warranted under the third *Cronic* category, were present. 287 U.S. 45, 53 S. Ct. 55 (1932) (where counsel was appointed on the day of a capital trial, the Supreme Court concluded that the circumstances were of such a magnitude that "the likelihood that any lawyer, even a fully competent one, could provide effective assistance [was] so small that a presumption of prejudice" was appropriate.).

Under *Strickland*, we conclude that the evidence does not preponderate against the post-conviction court's finding that counsel was not deficient in expecting Johnny Vales to testify without the need for a subpoena and that Petitioner was not prejudiced. The post-conviction court found:

> Although Mr. Johnny Vales' absence and unavailability [at trial] was unfortunate, it was by no fault of [trial counsel] and did not deprive Petitioner of any substantive or procedural right entitled to him by law.

- 6 -

Even if Mr. Johnny Vales'[ ] testimony was entitled to be introduced at trial, nothing in [trial counsel]'s performance or conduct deprived Mr. Johnny Vales from testifying or Petitioner's right to have him testify.

At the post-conviction hearing, Johnny Vales testified that his absence at trial was unforeseen. He had attended prior court proceedings for Petitioner, but he was hospitalized at the time of Petitioner's trial. He testified that he would have testified at Petitioner's trial without being under subpoena but for his illness. Trial counsel also testified that Johnny Vales had been present in court prior to his hospitalization. Thus, trial counsel was not unreasonable in expecting that the witness would be available to testify. Trial counsel also testified that if Johnny Vales had testified at trial, he would have bolstered Ms. Davis' testimony as an alibi witness. He testified, "I wanted Johnny Vales there because I thought it could add to [or] corroborate what other witnesses had said." Trial counsel submitted affidavits by Johnny Vales with Petitioner's motion for new trial and amended motion for new trial. In his affidavits, Johnny Vales stated that Petitioner told Mr. Brookins "not [to] talk about [Ms. Davis] or disrespect her that way." The affidavits do not mention a gambling debt as being a possible motive for the victims to fabricate a charge against Petitioner. Johnny Vales testimony at trial would have corroborated the three alibi witnesses who testified at trial for Petitioner. The jury rejected the alibis' testimony. Accordingly, Petitioner has not shown prejudice. Petitioner is not entitled to relief on this issue.

Petitioner also contends that trial counsel was ineffective for failing to properly cross-examine both Mr. Brookins and Mr. Quarles. Petitioner argues that the intoxication of Mr. Quarles and Mr. Brookins, "combined with the anger of losing money and the pistols being fired into the air provided [trial counsel] a clear avenue to impeach the State's witnesses." The State asserts that Ms. Davis' testimony at the post-conviction hearing that shots were being fired into the air at the party, as well as testimony that Mr. Brookins lost approximately $450 to Petitioner while playing cards at the party is "new information" that trial counsel was unaware of at the time of trial, and therefore, Petitioner has not established that counsel's performance was deficient.

In its order denying relief, the post-conviction court noted that Ms. Davis' testimony at the post-conviction hearing was largely consistent with her trial testimony, but that Ms. Davis testified at the post conviction hearing that Mr. Quarles and Mr. Brookins were both intoxicated and that she saw Petitioner have cordial interactions with Mr. Quarles and Mr. Brookins after the alleged incident. The post-conviction court found,

> [t]he points raised by Petitioner's [post-conviction] counsel, as noted in the previous paragraph, make for a colorful argument and would have

been nonetheless important facts to [trial counsel]'s trial strategy. Despite the facts importance and significance to Petitioner's defense, it has not been shown how [trial counsel] performed ineffectively or incompetently in regards to the use of these facts at trial.

At the post-conviction hearing, Petitioner posited a new theory that losing a substantial sum of money to Petitioner at the party motivated Mr. Brookins to fabricate an aggravated assault charge in retaliation. Petitioner did not establish, however, that the facts presented at the post-conviction hearing to support this theory were made known to trial counsel at the time of trial. Tennessee courts will not rely on the benefit of hindsight to evaluate trial counsel's reasonable but unsuccessful strategy. *Dellinger*, 279 S.W.3d at 295. This court has previously noted that the method by which a witness is examined is a "strategic and tactical decision of trial counsel which is not to be measured by hindsight." *State v. Kerley*, 820 S.W.2d 753, 756 (Tenn. Crim. App. 1991).

Evidence that the victims were intoxicated was presented to the jury. Ms. Davis testified that Mr. Quarles was intoxicated, and Officer Jonathan Linton testified that both Mr. Quarles and Mr. Brookins were "somewhat intoxicated." *State v. Vales*, 2015 WL 1094664, at *2-3. Trial counsel cannot be faulted for not impeaching the victims with evidence that only came to light at the post-conviction hearing, including Ms. Davis' and Johnny Vales' testimony that Petitioner and the victims were "cordial" with each other sometime after the incident, that guns were being fired into the air at the party, and that Petitioner won a large sum of money from Mr. Brookins. There was no proof presented at the post-conviction hearing that trial counsel knew, or should have known through reasonable investigation, of these facts. Therefore, Petitioner is not entitled to relief on this issue.

Petitioner also contends that appellate counsel was ineffective in raising the issue of juror misconduct, because he did not properly file his reply brief until after oral argument. Appellate counsel did not testify at the post-conviction hearing.

The post-conviction court concluded that Petitioner failed to establish that appellate counsel's performance was deficient or that Petitioner suffered prejudice from any alleged deficiencies. The post-conviction court noted that appellate counsel successfully submitted his reply brief after oral argument. The issue was addressed on direct appeal. *Vales*, 2015 WL 1094667, at *7. A panel of this court found that based on the juror's testimony at the hearing on Petitioner's motion for new trial, Petitioner failed to make a threshold showing that any extraneous prejudicial information, fact, or opinion was imported to the juror:

The evidence adduced at the hearing on [Petitioner]'s motion for a new trial demonstrated that juror W.D. and Ms. Davis had, at best, a professional acquaintance and that Ms. Davis had not sought medical care for her son at Ms. Davis's place of employment for approximately four years. They briefly exchanged pleasantries outside of the courtroom, and juror W.D. denied that she met [Petitioner] or knew why Ms. Davis was outside the courtroom. Juror W.D. testified that her prior acquaintance with Ms. Davis did not influence how she credited Ms. Davis's testimony and that she did not share her relationship with any of the jurors. No testimony was presented that "extraneous prejudicial information, fact or opinion, was imported to one or more jurors or some outside improper influence was brought to bear on one or more jurors."

*Id*. (quoting *State v. Perry*, 740 S.W.2d 723, 725 (Tenn. Crim. App. 1987).

"Generally, the determination of which issues to present on appeal is a matter which addresses itself to the professional judgment and sound discretion of appellate counsel." *Campbell v. State*, 904 S.W.2d 594, 597 (Tenn. 1995). A reviewing court gives "considerable deference" to appellate counsel's judgment regarding which issues to raise, so long as the choices are within the "range of competence required of attorneys in criminal cases." *Carpenter v. State*, 126 S.W.3d 879, 887 (Tenn. 2004). Here, appellate counsel did raise the issue of potential juror bias, and the issue was properly determined. The post-conviction court noted, "[a]lthough appellate counsel may not have used Petitioner's exact arguments, [appellate counsel]'s performance has not been shown to have been deficient nor prejudicial to Petitioner. We agree. Petitioner is not entitled to relief on this issue.

Petitioner also raises two standalone claims: 1) that the trial court violated Petitioner's right to due process by denying trial counsel's motion for a continuance to have Johnny Vales testify; and 2) that Petitioner's right to a fair trial was violated due to juror bias. The State asserts that these issues are not properly before the court because they were not raised in his original or amended petitions for post-conviction relief.

Furthermore, the issue of juror bias was raised on direct appeal and resolved against Petitioner. "A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing," which occurs "where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence." T.C.A. § 40-30-106(h).

Additionally, Petitioner's due process complaint relating to the trial court's refusal to grant a continuance to have Johnny Vales testify is waived because it could have been raised on direct appeal. "There is a rebuttable presumption that a ground for relief not raised before a court of competent jurisdiction in which the ground could have been presented is waived." T.C.A. § 40-30-110(f). A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:

> (1) The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or

> (2) The failure to present the ground was the result of state action in violation of the federal or state constitution.

T.C.A. § 40-30-106(g).

The State asserts that Petitioner has waived the issue regarding the trial court's refusal to grant a continuance for Johnny Vales because it could have been presented on direct appeal and was not. We agree with the State. Petitioner does not contend that appellate counsel was ineffective for not raising it. Accordingly, Petitioner is not entitled to review of these claims.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE