BOGGS, J., delivered the opinion of the court in which GILMAN, J., joined. CLAY, J. (pp. 618-23), delivered a separate dissenting opinion.
OPINION
BOGGS, Circuit Judge.
In 2015, John Nathan Coleman used marijuana and cocaine while serving a term of supervised release from federal prison. After Coleman admitted his offense to a probation officer, the government moved to revoke his supervised release. In response to Coleman’s dissatisfaction with his court-appointed attorney, the district court appointed new defense counsel minutes before holding a revocation hearing in Coleman’s case. The district court proceeded to find that Coleman had violated the terms of his supervised release and imposed an above-Guidelines sentence of thirty months of imprisonment. Coleman appeals the revocation of his supervised release, arguing that he was constructively denied the assistance of counsel due to the brief amount of time between the appointment of new counsel and his revocation hearing. Coleman also argues that his sentence is procedurally unreasonable. For the reasons given below, we affirm.
I
In October 2007, Coleman sold three grams of crack cocaine to an informant working for the Drug Enforcement Administration (“DEA”). DEA agents subsequently arrested Coleman after he helped the informant to arrange a second cocaine transaction. Coleman ultimately pleaded guilty to conspiracy to distribute five grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846. The district court sentenced Coleman to ninety-two months of imprisonment and four years of supervised release and recommended that Coleman undergo substance-abuse treatment.
Six months before Coleman’s sentence was set to expire, the Bureau of Prisons granted Coleman’s application for a fur *610 lough transfer to a Lexington, Kentucky, establishment run by a charity, where he was to serve out the remainder of his sentence. Two months later, Coleman escaped from the establishment and did not return. The United States Marshal Service ultimately found Coleman in a Lexington neighborhood, and Coleman subsequently pleaded guilty to escape from federal custody, a violation of 18 U.S.C. § 751(a). Judge Joseph Hood, who was assigned Coleman’s new case, sentenced Coleman to fifteen months of imprisonment, to be followed by three years of supervised release that would run concurrently with his unfinished four-year supervised-release term.
Coleman completed his prison sentences on September 19, 2014, and began serving his two concurrent terms of supervised release. But less than two months later, Coleman admitted to having violated the conditions of his supervised release by using cocaine. Judge Hood ordered that Coleman serve an additional six-month term of imprisonment, to be followed by ninety days of in-patient substance-abuse treatment and the remainder of his supervised-release term.
After finishing the court-ordered substance-abuse treatment on June 30, 2015, Coleman was released from the treatment facility on several conditions, including that he refrain from using controlled substances without a prescription and abstain from committing any state or federal offenses. But two days later, in a routine interview with his probation officer, Coleman admitted that he had recently smoked marijuana. The following week, after a urine sample that Coleman provided tested positive for cocaine, the government petitioned the court to revoke Coleman’s supervised-release term for violating the conditions that he not use controlled substances or engage in criminal activity.
On July 9, a magistrate judge appointed local attorney Derek Gordon to represent Coleman and scheduled a revocation hearing for August 4 before Judge Hood, who, as mentioned above, had already presided over Coleman’s escape conviction and sentencing, as well as his first revocation hearing. But eight days later, Coleman filed a pro se motion for new counsel, in which he expressed that he was dissatisfied with Gordon’s work. In his motion, Coleman also admitted to taking “2 hits off of a [marijuana] joint” and asked the district court for leniency in sentencing, explaining that he had played only a minor role in the 2007 drug conspiracy and that he wanted to resume “a normal life” with his wife and child.
Judge Hood convened a hearing on Coleman’s motion on July 27 at 10:05 a.m. The district court first asked Gordon and Coleman about the latter’s motion for new counsel. When Coleman confirmed that he wanted to discontinue his relationship with Gordon, the district court granted Coleman’s request and relieved Gordon. The court then appointed attorney Robert Abell, who was already present at the hearing on the court’s request, as Gordon’s replacement. Upon confirming that Abell had copies of Coleman’s presentence and violation reports, the court called for a recess in order to give Abell time to review the documents with Coleman.
The court went back on the record at 10:19 a.m., fourteen minutes after the hearing first started. Abell informed the court that Coleman would not be contesting the marijuana and cocaine-related charges mentioned in the violation reports and remarked that “[i]t’s my understanding the court has a final hearing next Tuesday.” The court asked whether the parties wished to hold that final hearing as scheduled during the following week, or if they preferred to “just go ahead and have *611 it today.” Coleman spoke up and volunteered that he “wanted to get it out of the way,” and Abell confirmed that “Mr. Coleman is ready to go forward today and get this matter completed.” In accordance with Coleman’s request, the court treated the remainder of the hearing as a revocation hearing.
The district court began by noting that the presentence report identified the Guidelines imprisonment range for Coleman’s offense as twenty-one to twenty-seven months. The court then asked whether Abell wished to “speak on behalf of Coleman.” Abell responded:
Judge, I guess the record indicates at worst that Mr. Coleman has an ongoing substance abuse problem that he’s struggled with significantly, and certainly the court has familiarity with his history and I am sure will take that into consideration when determining what action is appropriate today.
The court then asked whether Coleman wished to make a statement. Coleman, speaking on his own behalf, admitted to the court that he was “wrong” to have used illegal drugs while on supervised release, but then proceeded to discuss his substance-abuse problem and complain about the inadequacy of the treatment that he received in the residential treatment facility. In response, the court observed that Coleman had repeatedly violated the terms of his supervised release:
[W]hen you do ... dope, that’s a violation, and that’s — that just seems to be a recurring problem with you.... [Apparently you don’t seem to appreciate the fact that when we say do not use illegal substances, that means you don’t use it, regardless of whether you ... get home and you don’t have a drug program immediately available for you....
The court also admonished Coleman for his attempt to blame his violations on the treatment facility’s failures:
I understand that [the residential program] didn’t have what you wanted them to have or [what] they said they were supposed to have. But then you got ... out and you did it. You did dope. The problem is you are not supposed to be doing dope_ Period. Not at all.... I don’t think it is helping you at all to be involved [in treatment], and it’s not helping us. We are spending money ... [and] to be helped, you have got to want to be helped.
The court concluded that “you do have a weakness, and I’m sorry for that; but we have tried to do what we could to help you with that weakness, and we haven’t been very successful.”
The court then revoked Coleman’s supervised release and sentenced him to thirty months of imprisonment — three months above the upper end of the applicable Guidelines range — with no further supervised release. The court concluded by asking Coleman, his counsel, and the prosecutor if they had any objections to the imposed sentence. Each responded in the negative.
Coleman timely filed a notice of appeal. On appeal, Coleman argues that he was constructively denied the assistance of counsel during his revocation hearing. He also argues that the district court’s sentence was procedurally unreasonable because the district court failed to consider relevant sentencing factors and did not provide reasons for imposing an above-Guidelines sentence. We address each of Coleman’s arguments in turn.
II
We begin with Coleman’s claim that he was constructively denied the assistance of counsel at his revocation hear *612 ing on the ground that Abell had insufficient time in which to prepare a defense. Claims of ineffective assistance of counsel present mixed questions of law and fact that we review de novo. United States v. Ferguson, 669 F.3d 756, 761 (6th Cir. 2012). However, we generally review such claims on collateral review because the record on direct appeal “is [often] insufficient to assess the merits of the claim.” United States v. Smith, 600 Fed.Appx. 991, 993 (6th Cir. 2015); see also Massaro v. United States, 538 U.S. 500, 504-05, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003). Only in the rare case that would not benefit from further record development do we consider such claims on direct review. See United States v. Franklin, 415 F.3d 537, 555-56 (6th Cir. 2005).
As a general rule, claims of ineffective assistance of counsel are governed by the familiar two-part framework set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under Strickland, a criminal defendant is not entitled to relief unless he proves both that counsel’s performance was deficient, measured by reference to “an objective standard of reasonableness,” id. at 688, 104 S.Ct. 2052, and resulting prejudice, which exists where “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different,” id. at 694, 104 S.Ct. 2052. But in limited cases, we may dispense with Strickland’s prejudice inquiry where the “circumstances arising in a criminal prosecution ‘are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.’ ” Fuller v. Sherry, 405 Fed.Appx. 980, 985 (6th Cir. 2010) (quoting United States v. Cronic, 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)).
In particular, in United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the Supreme Court identified three scenarios in which a defendant is entitled to a presumption of prejudice: First, courts must presume prejudice where there has been a “complete denial of counsel” at a “critical stage” of the criminal proceedings. Id. at 659, 104 S.Ct. 2039. Second, we also presume prejudice “if counsel entirely fails to subject the prosecution’s case to meaningful adversarial testing.” Ibid. Third, even if counsel is present and available to assist the accused, a prejudice inquiry is unnecessary where “the likelihood that any lawyer, even a fully competent one, could provide effective assistance” is minimal. Id. at 559-60.
We have cautioned that under the third scenario, which Coleman invokes on appeal, see Appellant Br. 8, the presumption of prejudice applies only in “limited, egregious circumstances,” not simply “because counsel was belatedly appointed and the court refused to grant additional time to prepare,” Fuller, 405 Fed.Appx. at 985. When looking to the surrounding circumstances in this last category of cases, five factors “relevant to an evaluation of a lawyer’s effectiveness in a particular case” aid courts’ determination of whether the prejudice inquiry may be dispensed with, Cronic, 466 U.S. at 663, 104 S.Ct. 2039, namely, “(1) [t]he time afforded for investí- - gation and preparation; (2) the experience of counsel; (3) the gravity of the charge; (4) the complexity of possible defenses; and (5) the accessibility of witnesses to counsel,” id. at 652, 104 S.Ct. 2039 (quoting United States v. Cronic, 675 F.2d 1126, 1129 (10th Cir. 1982)).
As applied to Coleman’s case, these five factors suggest that this is not one of the extraordinary and “egregious” cases in which we may dispense with Strickland’s prejudice inquiry. Fuller, 405 Fed.Appx. at *613 985. Coleman estimates that he had twelve minutes in which to consult with Abell. Appellant Br. 4. Although we acknowledge that twelve minutes would ordinarily be a relatively short amount of time for an attorney to investigate and prepare for a revocation hearing, Coleman did not — and does not now — contest the charges against him. Ibid. Moreover, this first factor alone does not warrant applying the presumption of prejudice. As we have recognized, the adequacy of time for preparation can be measured only by reference to the other Cronic factors. See Fuller, 405 Fed.Appx. at 988; see also Chambers v. Maroney, 399 U.S. 42, 54, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) (“[W]e are not disposed to fashion a per se rule requiring reversal of every conviction following tardy appointment of counsel.... ”).
None of the remaining factors point in Coleman’s favor. Despite bearing the burden of proof, Coleman points to no evidence that Abell lacked criminal-defense experience. Moreover, the charge below— that Coleman violated the conditions of his supervised release by using recreational drugs — was not nearly as grave as the charges in those cases in which we have dispensed with the presumption of prejudice. See United States v. Morris, 470 F.3d 596, 598 (6th Cir. 2006) (felony firearm and drug possession); Mitchell v. Mason, 325 F.3d 732, 735 (6th Cir. 2003) (first-degree murder); Hunt v. Mitchell, 261 F.3d 575, 578 (6th Cir. 2001) (felonious assault and domestic violence). Nor does Coleman articulate any possible defenses to the revocation charges or endeavor to identify any witnesses that Abell should have called. Importantly, Coleman openly admitted in his motion for new counsel that he had smoked marijuana while on supervised release, and the government produced urinalysis results that showed that Coleman had also used cocaine. Indeed, only after consulting with Coleman did Abell inform the court that Coleman would not be contesting the revocation charges.
We acknowledge that it is conceivable that Abell could have raised additional facts and arguments that might have encouraged the court to impose a lighter revocation sentence. But because Abell, by bringing Coleman’s substance-abuse problem to the court’s attention, did not “entirely” fail to subject the prosecution’s case to adversarial testing, Bell v. Cone, 535 U.S. 685, 697, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); Cronic, 466 U.S. at 659, 104 S.Ct. 2039, our initial inquiry is whether there is more than a minimal “likelihood that any lawyer, even a fully competent one, could provide effective assistance” under the circumstances of this case, Cronic, 466 U.S. at 659-60, 104 S.Ct. 2039.
Our review of the record suggests that it is entirely possible that competent counsel could have used the brief recess to ascertain that Coleman had, in fact, used marijuana and cocaine while on supervised release, and to learn about the few mitigating factors that were available to Coleman, namely, the realities that he had a substance-abuse problem, that he never received the substance-abuse treatment that he needed, and that his wife and child could help him to integrate into society. Indeed, this is precisely what the district court learned during its eleven-minute colloquy with Coleman, and it appears that Abell himself may have been aware of these facts as well; Abell reminded the district court that Coleman “has an ongoing substance abuse problem that he’s struggled with significantly” and urged the court to “take that [problem] into consideration.”
We emphasize how significantly the circumstances of this case differ from the facts in those few cases in which we have dispensed with Strickland’s prejudice in *614 quiry. In United States v. Morris, 470 F.3d 596 (6th Cir. 2006), for example, state and federal prosecutors forced a defendant to decide whether to plead guilty to state drug and firearm charges or risk facing more serious federal charges, but permitted him only a few minutes to consult his newly appointed counsel in a courthouse “bull pen” in which “attorneys and clients [had] to shout their communication” to be heard over the din of the “crowded” cell. Id. at 599. At that point, the attorney was misinformed of the likely federal sentence that the defendant would face and had not even received complete discovery. Id. at 598-99, 602. We faced nearly identical facts in Mitchell v. Mason, 325 F.3d 732 (6th Cir. 2003), in which we held that a defendant was constructively denied counsel when his attorney spoke with him for a mere six minutes before going to trial for first-degree murder. Id. at 741, 744-48. Similarly, in Hunt v. Mitchell, 261 F.3d 575 (6th Cir. 2001), a defendant accused of felonious assault and domestic violence proceeded to trial without having consulted with his attorney at all. Id. at 583.
Coleman’s case differs in many salient respects, all of which can be boiled down to the reality that unlike the attorneys in Morris, Mitchell, and Hunt, Abell could have adequately prepared himself for the relatively simple task of advocating for a lower sentence in the time he was given. Indeed, the record suggests that Abell was far more prepared than the defense attorney in Fuller v. Sherry, 405 Fed.Appx. 980 (6th Cir. 2010), in which we held that a defendant was not entitled to a presumption of prejudice. Id. at 989. In that case, defense counsel had only eighty-eight minutes “to meet with [his] new client, discuss a potential plea, consider motions and discovery requests, review discovery documents, and read the preliminary examination transcript.” Id. at 988. Given that Fuller’s case was relatively uncomplicated when compared with those of the defendants in Morris, Mitchell, and Hunt, we concluded that unlike the attorneys in those cases, Fuller’s attorney “did not have to go to trial entirely unprepared,” and Strickland, not Cronic, therefore provided the appropriate framework for gauging counsel’s effectiveness. Ibid. Because it is clear that Abell was not “entirely unprepared,” the same result obtains here.
We note that Coleman, himself a seasoned veteran of the criminal-justice system, did not believe that Abell lacked sufficient knowledge of his circumstances to adequately represent him at the revocation hearing. Indeed, if the facts of this case were as stark as those set forth by our dissenting colleague, we might well view this case differently. But the person who “fast-tracked” this case and put it on “speed dial” was Coleman. Dissenting Op. at 618, 621-22. Prior to the revocation hearing, Coleman had an attorney. But Coleman requested a new one, and the district court obliged by appointing Abell. Then, rather than taking advantage of the court’s invitation to adjourn the hearing, Coleman declined, volunteering, “I wan[t] to get it out of the way.” The speed with which Coleman’s case progressed was therefore determined by Coleman himself, not by Abell, the prosecutor, or the court. Under these circumstances, we believe that Strickland sets forth the standard applicable to Coleman’s claim of ineffective assistance of counsel.
We further note that the dissent’s quotation from the district court that “nothing is Mr. Coleman’s fault” is incomplete when read in isolation. Dissenting Op. at 621-22. The district court’s full statement reads: “I don’t want Mr. Coleman to think that— see, Mr. Coleman, from what I can tell just looking at several letters that I got from Mr. Coleman, nothing is Mr. Coleman’s fault.” That statement was made while the *615 court was considering Coleman’s motion for new counsel. It in no way related to Coleman’s decision to forego the adjournment.
We think that, ordinarily, the wiser course would be for counsel to spend more than a few minutes preparing for an event as significant as a hearing at which revocation and sentencing decisions will be made. But this is not a case in which “the constructive denial of counsel and the associated collapse of the adversarial system is [ejminently clear.” Moss v. Hofbauer, 286 F.3d 851, 861 (6th Cir. 2002). Given that the particular circumstances of this case do not so obviously suggest that the result below was “inherently unfair,” Cronic, 466 U.S. at 661, 104 S.Ct. 2039, the Strickland framework must be applied. Because Coleman does not meaningfully argue that he was prejudiced by Abell’s alleged failures, see Appellant Br. 9-10, we defer consideration of Coleman’s Strickland claim for collateral review, at which time he will be able to fully develop the record. See United States v. Aguwa, 123 F.3d 418, 423 (6th Cir. 1997) (observing that the preference for considering ineffective-assistance-of-counsel claims on collateral review “stems from the fact that a finding of prejudice is a prerequisite to a claim for ineffective assistance of counsel [under Strickland] and appellate courts are not equipped to resolve factual issues” (citation omitted)). Despite our dissenting colleague’s view, see Dissenting Op. at 622-23, nothing in this opinion suggests that Coleman has waived his Sixth Amendment right to counsel.
Ill
Coleman next claims that his thirty-month sentence is procedurally unreasonable. Ordinarily, for a sentence to be procedurally reasonable, the district court must have “(1) properly calculated the applicable advisory Guidelines range; (2) considered the other [18 U.S.C.] § 3553(a) factors as well as the parties’ arguments for a sentence outside the Guidelines range; and, (3) adequately articulated its reasoning for imposing the particular sentence chosen, including any rejection of the parties’ arguments for an outside-Guidelines sentence and any decision to deviate from the advisory Guidelines range.” United States v. Bolds, 511 F.3d 568, 581 (6th Cir. 2007). In this case, Coleman argues that the district court failed to consider the factors set forth in 18 U.S.C. § 3553(a), failed to consider substance-abuse treatment as an alternative to incarceration, and failed to state in open court its reasons for imposing a sentence three months above the applicable Guidelines range.
We ordinarily review the procedural reasonableness of a sentence for an abuse of discretion. United States v. Daniels, 641 Fed.Appx. 481, 486 (6th Cir. 2016). But where, as here, the defendant fails to raise any objection to the procedural reasonableness of a sentence after the district court explicitly asks for objections, we may review only for plain error. See United States v. Battaglia, 624 F.3d 348, 350 (6th Cir. 2010); United States v. Bostic, 371 F.3d 865, 872-73 (6th Cir. 2004). To show plain error, Coleman must establish (1) that an error occurred; (2) that the error was clear or obvious; (3) that it affected his substantial rights; and (4) that it affected the “fairness, integrity, or public reputation of the judicial proceedings.” United States v. Vonner, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (quoting United States v. Gardiner, 463 F.3d 445, 459 (6th Cir. 2006)). We have held that “[a] sentencing error affects a defendant’s substantial rights when there is a reasonable probability that, but for the error, [the defendant] would have received a more favorable sentence.” United States v. Wilson, 614 F.3d *616 219, 223 (6th Cir. 2010). Applying this standard, we conclude that none of Coleman’s complaints warrants the vacation of his sentence.
A
As adverted to above, when determining a defendant’s sentence upon finding a violation of supervised-release conditions, a district court must consider various sentencing factors, including those set forth in 18 U.S.C. § 3553(a). See 18 U.S.C. § 3583(e). All told, a district court must assess “the nature and circumstances of the offense and the history and characteristics of the defendant; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant appropriate treatment; the pertinent Guidelines or policy statements; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to victims.” United States v. Johnson, 640 F.3d 195, 203 n.1 (6th Cir. 2011) (citing 18 U.S.C. §§ 3553(a), 3583(e)). A district court must also adequately articulate its reasoning for imposing the chosen sentence. Id. at 202. A failure to satisfy both requirements is procedural error that may warrant resentencing. See United States v. Johnson, 356 Fed.Appx. 785, 793-95 (6th Cir. 2009).
Coleman argues that the district court’s explanation of its sentence suggests that it did not consider any of the relevant factors set forth in 18 U.S.C. § 3553(a) or the possibility of treatment. But the requirement that a district court weigh the, factors does not obligate the district court to make express on-the-record “findings” on each one. Appellant Br. 11. As we have emphasized, some factors might prove to be more relevant than others in a given case, and the law thus does not require district courts to “provide a ‘ritualistic’ one-by-one ‘incantation’ of each factor.” United States v. Malone, 404 Fed.Appx. 964, 965 (6th Cir. 2010) (quoting United States v. Moon, 513 F.3d 527, 539 (6th Cir. 2008)). In other words, we do not “read a sentencing transcript in a vacuum.” Id. at 967. Instead, we ask whether the sentencing judge provided an explanation for the sentence sufficient for this court to discern that the judge weighed the relevant factors and did not “simply selee[t] what the judge deem[ed] an appropriate sentence without such required consideration.” Moon, 513 F.3d at 539 (quoting United States v. Jones, 489 F.3d 243, 251 (6th Cir. 2007)). In reviewing the record as a whole, we conclude that the district court’s explanation for Coleman’s thirty-month sentence satisfied this goal.
Read in its entirety, the hearing transcript shows that the district court considered the relevant sentencing factors and chose to give Coleman a relatively lengthy term of imprisonment out of concern for Coleman’s unwillingness to tackle his substance-abuse problem and the corresponding need to deter him from using illegal drugs in the future. In arriving at this conclusion, the district court addressed the nature and circumstances of Coleman’s offense when it admonished him for his decision to continue using illegal drugs while on supervised release. The court explained that Coleman did not “seem to appreciate the fact that when we say do not use illegal substances, that means you don’t use it, regardless of whether” a treatment program is available. The district court also addressed Coleman’s own history and characteristics, noting that he failed to take responsibility for his recurring violations and instead attempted to blame the residential treatment program for not properly treating his addiction. Lastly, the district court explicitly considered and rejected substance-abuse treatment as an alternative to incarceration when it acknowl *617 edged that although Coleman had a “weakness” for drugs, his unwillingness to “be helped” in the past strongly suggested that further treatment would not “hel[p] [him] at all.”
In short, the district court clearly and adequately explained its reasons for sentencing Coleman to a thirty-month term of imprisonment and not returning him to treatment, and the court’s explanation reveals that it carefully considered the various factors relevant to sentencing. A district court can, of course, “always say more.” Malone, 404 Fed.Appx. at 966. But in this case, the district court’s thorough discussion of Coleman’s history and problems adequately apprised the parties, the public, and this court of the basis for Coleman’s sentence. The law demands no more.
B
Coleman also challenges the procedural reasonableness of his sentence on the ground that the district court did not acknowledge or explain why it gave Coleman an above-Guidelines sentence. 18 U.S.C. § 3553(c)(2) provides that a district court must give “the specific reason for the imposition of’ an above-Guidelines sentence in open court. This requirement extends to revocation hearings. See Johnson, 356 Fed.Appx. at 793-95; United States v. Manning, 317 Fed.Appx. 517, 523-24 (6th Cir. 2009). Applying 18 U.S.C. § 3553(c)(2), we have held that a district court “must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.” Daniels, 641 Fed.Appx. at 489-90 (quoting Gall v. United States, 552 U.S. 38, 50, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)). A failure to explain that justification to the defendant in open court is error. Ibid.; United States v. Blackie, 548 F.3d 395, 401 (6th Cir. 2008).
In this case, the district court did not explicitly acknowledge that it was imposing a sentence that was three months above the applicable Guidelines range. As our recent decision in United States v. Daniels, 641 Fed.Appx. 481 (6th Cir. 2016), suggests, such a failure might well have been reversible error if an abuse-of-discretion standard applied in this case. Id. at 490-92. But á district court’s failure to explicitly acknowledge that it is imposing an above-Guidelines sentence does not amount to plain error where the district court properly calculates the applicable Guidelines range and provides an explanation for its sentence that makes clear why the imposed sentence fell outside of that range. Compare United States v. Zobel, 696 F.3d 558, 566-69 (6th Cir. 2012) (finding no plain error where district court otherwise adequately explained sentence and acknowledged applicable Guidelines sentencing range), with Blackie, 548 F.3d at 401-02 (explaining that the district court plainly erred when it neither referred to the applicable Guidelines range nor provided specific reasons for an upward variance in court). Such is the case here.
At the start of Coleman’s revocation hearing, the district court calculated Coleman’s maximum revocation sentence of thirty-six months and the applicable Guidelines range of twenty-one to twenty-seven months. In a lengthy colloquy with Coleman, the district court proceeded to consider in depth the applicable sentencing factors, making it clear that it was troubled by Coleman’s obvious and repeated disregard for the supervised-release conditions that the court had imposed in the past. In short, the district court’s discussion left little room for ambiguity for why it believed that an above-Guidelines sentence was necessary in Coleman’s case. Under these circumstances, the district court’s failure to “add an explicit coda” as *618 to how each of its observations supported a variance does not amount to plain error. Malone, 404 Fed.Appx. at 969.
IV
We acknowledge that Coleman’s counsel was given a relatively short amount of time in which to prepare for his client’s revocation hearing. But a presumption of prejudice is not warranted in this case given that Coleman’s revocation hearing presented his attorney with a relatively simple task for which extensive preparation would have been of questionable value. In light of the reality that the parties have not extensively briefed the issue of prejudice on appeal, Coleman’s ineffective-assistance-of-counsel claim would more appropriately be brought in a 28 U.S.C. § 2255 proceeding under the framework set forth in Strickland. Given that Coleman’s sentence withstands his procedural-reasonableness challenge on plain-error review, we AFFIRM the district court’s revocation judgment.