NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0493n.06

Case No. 22-3124

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 01, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) ) | |
| DEEVONN WALKER, | ) | |
| Defendant-Appellant. | ) ) ) | OPINION |

Before: SILER, BUSH, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** Deevonn T. Walker used his apartment to store, mix, package, and sell fentanyl, methamphetamine, and crack cocaine. When officers arrested Walker, they found him in possession of hundreds of grams of drugs, tools of the drug trade, firearms, and thousands of dollars in cash. Following Walker's guilty plea to various federal charges, the district court imposed a mid-Guidelines range sentence of 195 months.

On appeal, Walker asserts that the district court erred by applying a two-point enhancement under U.S.S.G. § 2D1.1(b)(12) for maintaining drug-involved premises, and by imposing an unreasonable sentence. Seeing no error by the district court, we affirm.

**I.**

Based on evidence derived from a confidential informant and controlled purchases of fentanyl, officers obtained and executed a warrant for Walker's apartment. The apartment contained two bedrooms—north and south. Officers found Edwin Lee Robinson Jr., Walker's co-conspirator, in the south bedroom. The bedroom was replete with drug trafficking-related items, including a large amount of fentanyl, a gun, ammunition, and various implements for drug distribution, such as scales, baggies, and a cutting agent. When officers discovered Robinson in the bedroom, he was in the process of mixing drugs.

Walker resided in the north bedroom. From a search of the bedrooms, officers recovered crack cocaine, fentanyl, methamphetamine, three guns, and cash totaling approximately $13,400. From Walker personally, the police recovered keys to the apartment.

Walker was indicted for a host of drug and gun-related offenses: conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846; possession with intent to distribute, in violation of §§ 841(a)(1) and (b)(1)(C); being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Without a plea agreement, Walker pleaded guilty to the indictment.

The probation office recommended a two-point enhancement for maintaining drug-involved premises under U.S.S.G. § 2D1.1(b)(12), which the district court applied, over Walker's objection. After detailing its reasoning and consulting the § 3553(a) factors, the district court sentenced Walker to 135 months of imprisonment for the drug counts, plus 60 months for the firearm violation, for a total of 195 months' imprisonment, in the middle of the Guidelines range.

On appeal, Walker contests both the district court's application of the premises enhancement as well as the reasonableness of his ensuing sentence.

## II.

**A.** We begin, as we customarily do, with the standard of review. Walker's challenges sound in procedural reasonableness, which "requires the court to properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence." *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019) (citations and quotations omitted). We typically review procedural reasonableness challenges for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 45–46, 53 (2007); *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007). That means we grant relief only for an error of law, a clearly erroneous finding of fact, or where we are otherwise left with the "definite and firm conviction" that the district court clearly erred. *United States v. Hymes*, 19 F.4th 928, 932–33 (6th Cir. 2021).

It bears acknowledging, however, that we have not been of one mind when it comes to the standard of review for procedural reasonableness challenges to the application of a sentence enhancement. *See United States v. Walters*, 775 F.3d 778, 781 (6th Cir. 2015) ("Whether the district court properly applied a sentence enhancement under the Guidelines is . . . a matter of procedural reasonableness."). We have sometimes said the standard is clear error; on other occasions, we have said de novo. *Compare United States v. Jackson-Randolph*, 282 F.3d 369, 390 (6th Cir. 2002) (reviewing for clear error), *with United States v. Sweet*, 630 F.3d 477, 480 (6th Cir. 2011) (reviewing de novo). On yet other occasions, we have acknowledged the unsettled question but left it unresolved. *United States v. Abdalla*, 972 F.3d 838, 850 (6th Cir. 2020) ("[T]he standard

3

for reviewing a Guidelines enhancement applied to a given fact pattern is somewhat murky."); *see also United States v. Bell*, 766 F.3d 634, 636 (6th Cir. 2014) ("Our circuit has not settled on the proper standard of review for assessing such enhancements."). For today's purposes, we can assume that de novo review governs, as Walker's appeal lacks merit under any relevant standard of review. *See United States v. Thomas*, 933 F.3d 605, 609–10 (6th Cir. 2019).

**B.** Turning first to Walker's challenge to the sentence enhancement, U.S.S.G. § 2D1.1(b)(12) instructs a district court to apply a two-level sentence enhancement if Walker "maintained a premises for the purpose of manufacturing or distributing a controlled substance." Sometimes referred to as the "drug-house enhancement," this Guidelines provision applies to one "who (1) knowingly (2) opens or maintains any place (3) for the purpose of manufacturing or distributing a controlled substance." *United States v. Johnson*, 737 F.3d 444, 447 (6th Cir. 2013) (citing *United States v. Russell*, 595 F.3d 633, 644 (6th Cir. 2010)). As Walker only disputes the latter two elements, we accept that the "knowingly" factor has been satisfied.

Did Walker maintain drug-involved premises? We believe he did. When a "defendant lives in the house" at issue, as was the case with Walker, "the maintaining-a-place element is normally easily proved." *Id.* (quoting *Russell*, 595 F.3d at 645 (citations and brackets omitted)). In that instance, the defendant "both 'h[olds] a possessory interest in' and 'control[s] access to, or activities at' his own home." *Id.* (quoting U.S.S.G. § 2D1.1 cmt. n.17).

That fairly describes Walker. By his own words, he acknowledged his interest in and control over the apartment. At sentencing, Walker admitted that he had a possessory interest in the apartment, which could be "inferred by his coming in and going out of [the] residence." And the informant who formed the partial basis for the search warrant told police that Walker resided there. The record also reflects Walker's control over the access to and activities within the

4

apartment. He carried keys to the apartment. And he furnished his bedroom, which we have recognized as evidence of "maintaining" drug-involved premises. *See Russell*, 595 F.3d at 644–45.

Walker emphasizes that he neither owned nor rented the apartment. But we do not require ownership or rental to trigger the "maintaining-a-place" element of the § 2D1.1(b)(12) enhancement. *Id.* at 644. All that is necessary is that Walker "live[d] in the house." *Johnson*, 737 F.3d at 447 (quoting *Russell*, 595 F.3d at 645). By residing in and dealing drugs from the apartment, having the keys to the apartment, and furnishing it, Walker's conduct satisfied the maintaining-a-place element. *Id.*

What is more, he used the apartment to manufacture and distribute drugs. To satisfy this final element of the enhancement, "'*one of* [Walker's] primary or principal uses for the premises' [must be] the distribution of drugs." *Id.* (quoting U.S.S.G. § 2D1.1 cmt. n.17). Here, Walker dedicated the south bedroom to manufacturing and packaging drugs. Officers discovered his co-conspirator Robinson in the south bedroom mixing drugs, with scales, baggies, and a cutting agent scattered about. Elsewhere in the apartment, officers found additional quantities of drugs, firearms, ammunition, and approximately $13,400 in cash. All things considered, there was no error in applying the enhancement here. *See, e.g.*, *Johnson*, 737 F.3d at 447, 449 (upholding application of the enhancement where officers found a drug scale, large quantities of drugs, firearms, and a large amount of cash); *Bell*, 766 F.3d at 637 (similar); *United States v. Hagan*, 766 F. App'x 356, 359 (6th Cir. 2019) (similar).

Walker disagrees. He faults the government for not establishing the duration of time over which Walker kept the drugs, money, guns, and paraphernalia in his home. Yet he cites no authority for grafting a temporal limitation onto the drug-involved premises enhancement.

5

*Cf. Johnson*, 737 F.3d at 448 ("[I]t does not follow that [] alleged infrequency insulates him from the enhancement."). He also misapprehends the record. A confidential informant, it bears reminding, bought drugs multiple times from Walker at the apartment in the month before his arrest. At the time of his arrest, officers discovered $13,400 in cash in his apartment, yet Walker was unemployed, with no known lawful source of income. And a large quantity of drugs—an adjusted weight of 949.48 kilograms—was also discovered in the apartment, an amount that was unlikely to appear overnight. The district court properly applied the enhancement.

**C.** Walker makes one last argument as to why his sentence was procedurally unreasonable. Although Walker claims to make a substantive reasonableness challenge as well, his argument is based entirely on procedural errors, so we view it under that rubric. *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). Walker contends that the district court overlooked various § 3553(a) factors, including the nature of Walker's offenses (which he characterizes as merely the acts of a "street-level drug dealer") and his personal characteristics, including a difficult childhood.

Walker's claims lack support in the record. To his argument that he was just a "street-level drug dealer," the district court found that Walker was "engaged in substantial trafficking activity in various drugs." As to Walker's personal history, the district court noted Walker's "propensity for firearms," noting his "history of violence as evidenced by [a prior] aggravated robbery with a firearm specification" offense. The district court also discussed Walker's allegations of mental abuse, finding that Walker was "in good physical and fair mental health" and adding that he "did not report suffering from any physical or sexual abuse." And as to drug use by Walker's parents, the district court noted that it had read and considered the entirety of the PSR, which contained Walker's more detailed allegations. That manner of review was more than sufficient to satisfy the

district court's procedural obligations.  *See United States v. Simmons*, 501 F.3d 620, 625 (6th Cir. 2007); *see also United States v. Coleman*, 835 F.3d 606, 616 (6th Cir. 2016).

## III.

We affirm the judgment of the district court.