NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0487n.06

Case Nos. 24-4066/4067

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

FILED

Oct 21, 2025

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| CHARLES MILTON, III, | ) | |
| Defendant-Appellant. | ) | |
| | ) | O P I N I O N |

Before: MOORE, BUSH, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. In 2013, Charles Milton, III pleaded guilty to one count of felon in possession of a firearm. The district court sentenced him to 63 months' imprisonment and three years of supervised release. Once released from prison, Milton repeatedly violated the terms of his supervision. One of these violations stemmed from Milton's pleading guilty to one drug charge and two gun charges in a new federal criminal case, a decade after the first. At a combined sentencing, the district court sentenced Milton to a collective 108 months in prison for the drugs-and-guns case. It then revoked his supervised release and ordered him reimprisoned for a term of 24 months for his supervised release violation, to be served consecutively to his 108-month sentence. Milton now appeals the dual decisions of the district court. We AFFIRM.

I.

*A. Factual Background*

In mid-January 2013, a grand jury indicted Milton for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  Later that year, Milton pleaded guilty.  The district court (U.S. District Court Judge Dan A. Polster) sentenced Milton to 63 months in prison, consecutive to an earlier-imposed state sentence.  Milton's sentence included a three-year term of supervised release, which required him to refrain from committing another federal, state, or local crime; illegally possessing a controlled substance; or possessing a firearm.

Milton's supervised release term began in June 2020.  Within his first two-and-a-half years on supervised release, Milton tallied several violations—almost all involving his unauthorized use of drugs, his failure to attend drug testing, or his failure to attend substance abuse counseling.  This conduct spurred three violation hearings.  During each hearing, Judge Polster continued Milton's supervision; reiterated the need for him to attend counseling; and added further requirements like ordering him to spend time in a community confinement house and imposing location monitoring.

Milton submitted a positive drug test in November 2022 and again in February 2023.  Then, in mid-May 2023, federal and local law enforcement executed a search warrant on two addresses linked to Milton.  Officers found a handgun and ammunition, a rifle, narcotics, and cash.  These discoveries led to state charges for drug possession and trafficking, and possession of weapons under disability.  The state charges prompted Judge Polster to issue an arrest warrant for Milton for violating the conditions of his supervised release in the 2013 case.

*B. Procedural Background*

In early August 2023, a federal grand jury indicted Milton on three counts related to the May 2023 search: (1) possession with intent to distribute controlled substances (21 U.S.C.

§ 841(a)(1)); (2) felon in possession of firearms and ammunition (18 U.S.C. § 922(g)(1)); and (3) possession of a firearm in furtherance of drug trafficking (18 U.S.C § 924(c)(1)(A)(i)). Milton's 2023 case was before U.S. District Court Judge Pamela A. Barker. A year later, Milton pleaded guilty to all three counts of the indictment pursuant to a written plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C).

In his plea agreement, Milton agreed to waive his right to appeal his sentence unless the sentence imposed exceeded the agreed-upon sentencing guidelines range of 70 to 108 months. During the change-of-plea hearing, the district court reviewed on the record the appeal waiver and confirmed that Milton understood its scope. The court also confirmed with Milton that he discussed the agreement with his attorney, understood its terms, agreed to the 70-to-108-month sentencing range, and initialed each page and signed the last. The district court then accepted Milton's "knowing and voluntary" plea. N.D. Ohio Case No. 23-cr-00437, Change of Plea Proceedings, R. 75, PageID 766.

At Judge Polster's request, Judge Barker agreed also to conduct Milton's supervised-release-violation hearing. So, in early December 2024, Judge Barker held a combined sentencing hearing for both cases. For his sentencing on the substantive offenses, Judge Barker imposed a term of 108 months in prison—concurrent terms of 48 months on the first two counts and a consecutive term of 60 months on the third count.

Judge Barker then proceeded to the hearing on revocation of supervised release. She first confirmed that Milton had two violations at issue: the commission of new federal offenses, specifically the three crimes for which he had just been sentenced; and the unauthorized use of drugs. Milton (through counsel) admitted the violations. Milton's new conviction for possession with intent to distribute constituted a Grade A violation of his supervised release. The violation

report prepared by Milton's probation officer explained that Milton's Grade A violation and criminal history category resulted in a 33-to-41-month guideline range for his supervised release violation. But the statutory maximum was 24 months. So the recommended range became 24 months. And, citing U.S.S.G. § 7B1.3, probation recommended a consecutive sentence. After hearing from probation and the parties, Judge Barker revoked Milton's supervised release, ordered him reimprisoned for the statutory maximum of 24 months, and ordered that he serve that term consecutive to his 108-month sentence he received for the substantive offenses.

Explaining her decision to impose a 24-month consecutive term of imprisonment, Judge Barker noted Milton's "problems while on supervision" and his "pattern" of repeated violations. N.D. Ohio Case No. 23-cr-00437, R. 76, PageID 813. Though he complied with certain terms of his supervised release and completed some treatment and location monitoring, Judge Barker observed that he "went right back to what he'd been doing." *Id.* at PageID 813–14. So, to her, Milton had "learned nothing. He was deterred from nothing. He didn't respect the law." *Id.* at PageID 814. Judge Barker agreed with the government that "to run the term concurrent would fly in the face of the law because he's shown a total disrespect for it" and there would therefore be "no consequence . . . for violating his supervised release." *Id.* This was "especially" so, Judge Barker found, because even though she accepted Milton's Rule 11(c)(1)(C) plea agreement in Case No. 23-cr-00437, he had a guidelines range that "would have been much higher" given the "drugs and guns" at issue there. *Id.* She noted that although his guidelines range was higher, by statute 24 months was "the maximum [she] c[ould] impose." *Id.* Judge Barker concluded by asking defense counsel for objections. Defense counsel "object[ed] to that imposition" but offered no basis for the objection. *Id.* at PageID 815. Milton appealed both his 108-month sentence and the

revocation of his supervised release and imposition of 24 months' reimprisonment. We consolidate those appeals for purposes of our consideration here.

II.

A. *Supervised Release Violation (Case No. 24-4066)*

Milton argues that the district court abused its discretion in imposing a consecutive term of imprisonment for his supervised release violation because the court based its decision on the nature and circumstances of Milton's new (drugs-and-guns) case rather than his original (felon-in-possession) case. He contends that this misplaced attention steered the court away from an appropriate focus on Milton's "breach[es] of trust" and caused the court to overlook a mitigating factor—his completion of 35 of 36 months of supervision. Appellant Br. 16. We disagree.

1. *Standard of Review*

We typically review challenges to the reasonableness of a sentence, including attacks on the consecutive nature of a sentence, for an abuse of discretion. *United States v. Hoyle*, 148 F.4th 396, 405 (6th Cir. 2025); *United States v. Berry*, 565 F.3d 332, 342 (6th Cir. 2009). But when a defendant "fails to appropriately preserve a procedural reasonableness argument, we review it for plain error only." *United States v. Sherrill*, 972 F.3d 752, 768–69 (6th Cir. 2020); *see United States v. Coleman*, 835 F.3d 606, 615 (6th Cir. 2016) (requiring specific objection to reasonableness of sentence after district court asks for objections). And here, Milton did not preserve any such argument because his objection did not provide the court with a "reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection." *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004) (quoting *United States v. LeBlanc*, 612 F.2d 1012, 1014 (6th Cir. 1980)). Plain-error review therefore applies and requires Milton to show a clear or obvious error that affected both his substantial rights and the "fairness,

integrity, or public reputation of the judicial proceedings." *Coleman*, 835 F.3d at 615 (quotation marks and citations omitted). An error in sentencing "affects a defendant's substantial rights when there is a reasonable probability that, but for the error, [the defendant] would have received a more favorable sentence." *Id.* (quotation marks and citation omitted).

To the extent Milton contends that his consecutive term of reimprisonment is too long, that raises substantive reasonableness concerns. *See United States v. Xu*, 114 F.4th 829, 846 (6th Cir. 2024). Substantive reasonableness arguments, however, "do not need to be raised before the district court to be preserved for appeal, and so we apply abuse of discretion review even where such arguments were not raised below." *Sherrill*, 972 F.3d at 769 (internal quotation marks and citation omitted); *see also Holguin-Hernandez v. United States*, 589 U.S. 169, 173–74 (2020) (concluding that "[n]othing more is needed to preserve the claim" that a sentence is substantively unreasonable than a defendant's "advocat[ing] for a sentence shorter than the one ultimately imposed").

### 2. *Procedural Reasonableness*

Criminal sentences must be procedurally and substantively reasonable. *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019) (citation omitted). "Procedural reasonableness focuses on the method that the district court used to arrive at the length of a sentence." *Hoyle*, 148 F.4th at 405 (citation omitted). One of "the job[s] of procedural unreasonableness" is to address concerns that the district court "failed to consider a factor or considered an inappropriate factor." *Parrish*, 915 F.3d at 1047 (quotation marks and citation omitted). Here, Milton essentially argues that the district court looked to the wrong conduct in considering the facts and circumstances of the offense, so his claim sounds in procedural reasonableness. *See id.* (citation omitted).

Section 3583(e) of Title 18 directs courts to "consider a subset of the factors" in 18 U.S.C. § 3553(a) when faced with a supervised-release violation. *Hoyle*, 148 F.4th at 406 (citation omitted). In deciding whether to revoke supervised release, a district court must consider eight of the factors in § 3553(a)—those delineated in "section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." *Esteras v. United States*, 606 U.S. ___, ___, 145 S. Ct. 2031, 2039 (2025) (quoting 18 U.S.C. § 3583(e)). "[S]ome factors," however, "might prove . . . more relevant than others," and "the law thus does not require district courts to provide a ritualistic one-by-one incantation of each factor." *Coleman*, 835 F.3d at 616 (citation modified). The district court need only "set forth enough to satisfy" us that it "has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *United States v. Jones*, 980 F.3d 1098, 1113 (6th Cir. 2020) (citation omitted).

Here, we are satisfied that the district court met this standard and did not supplant consideration of the "nature and circumstances" of Milton's original offense with consideration of those of his new substantive offenses. To start, the district court discussed Milton's history and characteristics. *See* 18 U.S.C. § 3553(a)(1). Among other things, it considered the probation officer's recommendations and violation report, which included information about Milton's criminal history and his record of compliance while under supervision. On these points, the report identified his criminal history category, his offense of conviction (felon in possession), and the violations he had accumulated over his three-year term of supervision. In addition to providing the written report, Milton's probation officer advised the district court that Milton's "attitude and cooperation towards supervision was very poor." N.D. Ohio Case No. 23-cr-00437, R. 76, PageID 808. And the court considered counsels' arguments. This included competing narratives from defense counsel and the government: on the positive side, Milton had completed substance abuse

treatment; on the negative side he had "refuse[d] to follow any directions from the Court" and had "continue[d] to flood the community with drugs." *Id.* at PageID 812.

Moving to the need for deterrence under 18 U.S.C. § 3553(a)(2)(B), the district court agreed with the government that despite Milton's multiple opportunities from Judge Polster after previous violations, Milton "was deterred from nothing." *Id.* at PageID 814. A consecutive term of reimprisonment, observed the court, would provide greater deterrence. The government's assertions about Milton selling drugs in his community provided the court with its rationale as to the need to protect the public from further crimes. *See* 18 U.S.C. § 3553(a)(2)(C). And in considering the "kinds of sentence and sentencing range established for" Milton's violation categories, as per 18 U.S.C. § 3553(a)(4)(B), the district court spoke to two relevant aspects of the sentence: (1) the term of reimprisonment and (2) whether it should run concurrently or consecutively to Milton's 108-month sentence. As to the former, it accepted probation's conclusion that the 24-month statutory maximum applied, even though Milton's guidelines range was higher. And as to the latter, it favored a consecutive term because "to run the term concurrent would fly in the face of the law" and there would be "no consequence then for violating his supervised release." N.D. Ohio Case No. 23-cr-00437, R. 76, PageID 814.

The district court also appropriately considered applicable policy statements from the Sentencing Commission about concurrent and consecutive sentencing. *See United States v. Johnson*, 640 F.3d 195, 208 (6th Cir. 2011) (citing 18 U.S.C. § 3584(b)). Specifically, U.S.S.G. § 7B1.3(f) recommends a consecutive term of reimprisonment following revocation of supervised release. *See Johnson*, 640 F.3d at 208 (explaining that although nonbinding, district courts "must consider § 7B1.3(f) when it is applicable"). "[E]xplicit reference" to § 7B1.3(f) is one way to know the district court considered this policy statement, but it is not necessary. *United States v.*

*King*, 914 F.3d 1021, 1025 (6th Cir. 2019) (citation omitted). It is enough that other record evidence demonstrates that the court considered this section and explained its rationale for imposing a consecutive term of imprisonment. *Id.*

We are thus satisfied that the district court "considered the parties' argument[s] and ha[d] a reasoned basis for exercising its own legal decisionmaking authority" when it elected to make Milton's term of reimprisonment consecutive. *Jones*, 980 F.3d at 1113.

Milton resists this conclusion in two ways. First, he says the district court failed to consider the fact that he served 35 of the 36 months of his supervised release term. *See Parrish*, 915 F.3d at 1049 (requiring district courts to address arguments raised in mitigation and to explain any rejection). The record does not bear out this complaint. Shortly after both parties noted Milton's remaining time on supervision, the court said it "considered the arguments of counsel." N.D. Ohio Case No. 23-cr-00437, R. 76, PageID 813. Those arguments included defense counsel's "mitigatory" averment that Milton had just "23 days left on supervision," meaning he had completed most of the time of his supervised release. *Id.* at PageID 809. The court weighed this point alongside the government's arguments that (1) Milton received several chances but refused to follow court directives and (2) a concurrent term of imprisonment would simply tell Milton that his actions on supervised release had no consequences. It is clear from the court's observation that Milton "repeatedly violated" his supervision conditions that the district court rejected the idea that the large proportion of time Milton had completed on supervised release was mitigatory. *Id.* at PageID 813.

Second, Milton contends that the district court failed to consider the conviction underlying his supervised release—felon in possession. This is also belied by the record. The court relied on the second superseding violation report throughout Milton's revocation proceedings. And that

report, which the court ensured Milton also reviewed, explicitly listed Milton's underlying offense of conviction in its justification section. Moreover, defense counsel reminded the court that Milton had served 63 months' imprisonment for the original offense. And counsel advocated, because of Milton having served that substantial term, for a violation term concurrent with the 108 months' sentence he had just received on the new offense. Thus, the court was acutely aware of and considered Milton's original offense.

Milton correctly notes that courts "[t]reat[] postrevocation sanctions as part of the penalty for the initial offense" as opposed to a penalty for violation conduct that might be "criminal in [its] own right" and "may be the basis for separate prosecution." *Johnson v. United States*, 529 U.S. 694, 700 (2000). Treating violations that way, the Court explained in *Johnson*, avoids any double-jeopardy issues. *Id.* at 700–01. A sentencing court is not, however, prohibited from considering the violation conduct when assessing a potential breach of the court's trust. Doing so is a distinct exercise from considering the retribution and punishment factor that the Supreme Court recently clarified is off-limits for revocation of supervised release. *Esteras*, 145 S. Ct. at 2045–46. And contrary to Milton's suggestion, there is no reason to assume that the district court's discussion of his violation conduct meant it lost sight of the "nature and circumstances" of the original offense.

One final point on this issue bears mentioning given the parties' arguments. As Milton himself acknowledges, sanctioning the breach of trust that accompanies supervised release violations is a permissible consideration when deciding whether to revoke a term of supervised release. *See United States v. Morris*, 71 F.4th 475, 482 (6th Cir. 2023) ("[A]lthough the district court may not impose a punishment for the violation conduct itself, it may sanction the 'breach of trust' associated with a violation." (citing *Johnson*, 640 F.3d at 204)). *Esteras* did not disturb our precedent in this regard. *See* 145 S. Ct. at 2040 n.5; *see also Hoyle*, 148 F.4th at 406 n.1

(recognizing that *Esteras* "expressly declined to consider whether addressing the defendants' 'breach of trust' remains a valid consideration for the sentencing court"). And here, we are satisfied that the district court did not go beyond that aim.

True, the district court's language about not respecting the law can signify, under some circumstances, consideration of the retribution and punishment factor disallowed under *Esteras*, 145 S. Ct. at 2039, 2042. But here, the context of the district court's statements shows that it was acting on Milton's breach of the court's trust. This breach came in the form of his repeated squandering of the opportunities the court extended to him following his multiple past violations and was now capped off by the new violations. Most illuminating of this fact is the district court's adoption of the government's view—almost immediately after the government's argument—that a concurrent term would mean Milton received "no consequence[s]" for violating his supervised release conditions. N.D. Ohio Case No. 23-cr-00437, R. 76, PageID 813–14. So there was no clear error in the district court's considerations here. And even were we to conclude otherwise, Milton has not made the case that any error affected his substantial rights. Indeed, he offers no argument that there is a reasonable probability that, but for the error, he would have received a more favorable term. *Coleman*, 835 F.3d at 615. Consequently, his procedural reasonableness challenge fails.

### 3.    *Substantive Reasonableness*

Milton also argues that his consecutive term of imprisonment was "excessive," essentially because the district court stacked the two-year term imposed upon revocation of his supervised release on top of the 108-month sentence for his substantive offenses. We read this as a challenge that his term is "too long," and therefore substantively unreasonable. *See United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). But a sentence within the sentencing guidelines range enjoys

a rebuttable presumption of substantive reasonableness. *See United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008). And it is a "tall order" for a defendant to overcome this presumption. *United States v. Bradley*, 897 F.3d 779, 786 (6th Cir. 2018).

Milton's initially calculated guidelines range exceeded the statutory maximum of 24 months for his violations. So, under U.S.S.G. § 5G1.1(a), that maximum became Milton's guidelines range. *See United States v. Pizzino*, 501 F. App'x 535, 536 n.1 (6th Cir. 2012). His term of reimprisonment thus was within the guidelines range and was presumptively reasonable. On appeal, Milton has not overcome his "heavy burden" of rebutting the presumption of reasonableness. *See United States v. Cunningham*, 669 F.3d 723, 733 (6th Cir. 2012). As explained, the district court thoroughly considered and discussed the appropriate § 3553(a) factors, as well as the policy statement on consecutive sentences. And it considered Milton's arguments in mitigation. That Milton "desired a more lenient sentence, without more, is insufficient to justify our disturbing the reasoned judgment of the district court." *United States v. Trejo-Martinez*, 481 F.3d 409, 413 (6th Cir. 2007); *see also United States v. Dexta*, 470 F.3d 612, 616 (6th Cir. 2006) ("The fact that the district court did not give the defendant the exact sentence he sought is not a cognizable basis to appeal, particularly where the district court followed the mandate of § 3553(a) in all relevant respects." (quoting *United States v. Jackson*, 466 F.3d 537, 540 (6th Cir. 2006)). We therefore reject his argument that his term of reimprisonment was excessive or substantively unreasonable.

III.

A. *Appeal Waiver (Case No. 24-4067)*

Milton argues that his aggregate 108-month sentence on the substantive offenses for which he pleaded guilty is unreasonable. But we agree with the government that Milton's appeal waiver precludes our review and Milton's silence on the issue waives any argument to the contrary.

1.        *Standard of Review*

We usually review de novo whether a claim raised on appeal falls within the scope of an appeal waiver. *United States v. Milliron*, 984 F.3d 1188, 1193 (6th Cir. 2021) (citation omitted). But Milton never objected to the plea agreement or appeal waiver, so we review for plain error. *See United States v. Presley*, 18 F.4th 899, 903–04 (6th Cir. 2021).

2.        *Scope of Waiver*

A criminal defendant may waive most of his rights, including the right to appeal, in a valid plea agreement. *Milliron*, 984 F.3d at 1192–93. An appeal waiver is "binding and forecloses appellate review" if (1) the defendant's claim is within the scope of the appeal waiver, and (2) "the defendant 'knowingly and voluntarily' agreed to the plea agreement and waiver." *Id.* at 1193 (citation omitted).

First, Milton's claim is within the scope of his plea agreement. *Id.*

In his plea agreement, Milton agreed to a limited waiver of his appellate rights:

Defendant acknowledges having been advised by counsel of Defendant's rights, in limited circumstances, to appeal the conviction or sentence in this case, including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction or sentence collaterally through a post-conviction proceeding, including a proceeding under 28 U.S.C § 2255. Defendant expressly and voluntarily waives those rights, except as specifically reserved below. Defendant reserves the right to appeal: (a) any punishment in excess of the statutory maximum; or (b) *any sentence to the extent it exceeds the maximum of the sentencing imprisonment range agreed to herein (70 months - 108 months)*. Nothing in this paragraph shall act as a bar to Defendant perfecting any legal remedies Defendant may otherwise have on appeal

or collateral attack with respect to claims of ineffective assistance of counsel or prosecutorial misconduct.

N.D. Ohio Case No. 23-cr-00437, Plea Agreement, R. 57, PageID 397–98 (emphasis added).

Relevant here, the reservation provision in Milton's appeal waiver allows him to appeal his sentence only if it exceeds the maximum of the agreed-to sentencing guidelines range or the statutory maximum sentence. Milton agreed to a sentencing guidelines range of 70 to 108 months. The district court sentenced him to 108 months' imprisonment. Milton's sentence, albeit at the top, does not exceed the guidelines range agreed to in his plea agreement. Nor does it approach the statutory maximums for any of the three offenses of conviction. His sentence is therefore not covered by the reservation provision, and is, accordingly, within the proscription of his waiver. *See Milliron*, 984 F.3d at 1193.

### 3. *Knowing and Voluntary*

Second, Milton knowingly and voluntarily agreed to the plea agreement and the appeal waiver. *Id.*

When a defendant's appeal falls within the scope of an appeal waiver, "only challenges to the validity of the plea agreement and the appeal waiver therein will be entertained." *Id.* Milton does not address his appeal waiver in his opening brief, and he filed no reply responding to the government's arguments on appeal. So he has waived any argument that his agreement to the appeal waiver was not knowing and voluntary. *See United States v. Russell*, 26 F.4th 371, 374–75 (6th Cir. 2022) (explaining that failure to raise an issue in "first brief on appeal" waives rather than forfeits an argument (citing *United States v. Noble*, 762 F.3d 509, 528 (6th Cir. 2014))). Even were that not the case, as discussed below, his appeal would fail on the merits. For the record shows that his agreement to the appeal waiver was both knowing and voluntary.

To determine if a waiver was knowing, we look to the plea colloquy and the written agreement. *United States v. Pitts*, 997 F.3d 688, 701 (6th Cir. 2021) (citation omitted). Under Rule 11(b), district courts must ensure that a criminal defendant "understands the terms of the[ir] plea agreement." *United States v. Sharp*, 442 F.3d 946, 951 (6th Cir. 2006). This typically requires the district court to discuss the appeal-waiver provision "in open court" and make sure the defendant understands it. *Id.* at 952; *see also* Fed. R. Crim. P. 11(b)(1)(N) (requiring district court to inform a defendant and determine that they understand the terms of any provision in a plea agreement waiving right to appeal). A district court can meet its Rule 11 obligations by, for example, advising the defendant he is giving up his appellate rights, "explain[ing] the exact contours" of the waiver, and "check[ing] with [the defendant] to make sure [the defendant] understood before moving on." *Pitts*, 997 F.3d at 702; *Sharp*, 442 F.3d 946.

Looking to Milton's plea colloquy, he confirmed on the record that he signed his plea agreement after reading and discussing it "fully and completely" with his attorney, and that he initialed each page to signify he had read, discussed, and understood everything in it. N.D. Ohio Case No. 23-cr-00437, R. 75, PageID 742–43. He also confirmed that he understood all its terms, including the sentencing range of 70 to 108 months. Moreover, the district court reviewed the contours of the appeal waiver on the record and Milton affirmed that he understood that too. And after Milton pleaded guilty and the court satisfied itself that (1) no one "made any promises or assurances of any kind" to Milton outside of the written agreement, and (2) no one "attempted in any way to force [him] to plead guilty or otherwise threaten [him]," the court found that he had knowingly and voluntarily done so. *Id.* at PageID 765–66.

The district court met its Rule 11 obligations. It discussed the appeal-waiver provision "in open court" and made sure Milton understood it. *See Sharp*, 442 F.3d at 952. The district court

advised Milton of the rights he was giving up. It explained that he could only appeal a sentence exceeding the agreed-upon guideline range of 70 to 108 months. And it confirmed that Milton understood these points. The plea colloquy therefore establishes that Milton knowingly and voluntarily entered the plea agreement. *See Pitts*, 997 F.3d at 701–02.

So too does the written agreement. *Id.* at 701. In the plea agreement itself, Milton acknowledged that counsel advised him of his appellate rights and confirmed his agreement to waive those appellate rights except, as relevant here, if his sentence exceeded the agreed-upon 70-to-108-month guidelines range. Milton's initials ("CM") appear on each page of his plea agreement, including the pages with the appeal waiver. The final page of the plea agreement contains a statement by Milton that he had read it in its entirety and discussed it with his attorney; that he had initialed every page to signify he understood and approved the provisions on each page; and that he was "entering this agreement voluntarily and of [his] own free will." N.D. Ohio Case No. 23-cr-00437, Plea Agreement, R. 57, PageID 404. And after that statement, Milton affixed his signature to the agreement. Thus, the written agreement also establishes that Milton knowingly and voluntarily entered into it. *See Pitts*, 997 F.3d at 701.

Because Milton's claim is within the scope of the appeal waiver in his Rule 11 plea agreement, and he knowingly and voluntarily agreed to the plea agreement, his appeal waiver "bind[s] and forecloses" our review of the reasonableness of his sentence on the substantive offenses. *Milliron*, 984 F.3d at 1193.

## IV.

For all of the foregoing reasons, we AFFIRM.