NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0189n.06

Nos. 23-5421/5465

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Apr 30, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| DEVONTE CORTEZ WELCH, | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

Before: MOORE, KETHLEDGE, and BLOOMEKATZ, Circuit Judges.

KETHLEDGE, Circuit Judge. Devonte Welch appeals the sentences imposed by the district court for his drug-trafficking conviction and for violating the conditions of his supervised release. We affirm in part and vacate in part.

I.

A.

In 2018, Welch pled guilty to possession of a firearm as a felon. The district court sentenced him to 38 months' imprisonment and three years of supervised release. Welch began his period of supervision in July 2020.

In February 2021, while still under supervision, Welch tested positive for oxycodone and marijuana. A few days later, police stopped Welch's car and found marijuana along with just under $1,000 in cash and 23 fentanyl pills. Two months later—on four occasions in April 2021—Welch sold fentanyl to a confidential informant. Police later obtained a search warrant for Welch's home and discovered 121 fentanyl pills, about $1,400 in cash, an AK-47 style rifle, two pistols, and

ammunition. A federal probation officer thereafter petitioned the district court to revoke Welch's supervised release, alleging seven separate violations of his release conditions. Specifically, the officer alleged one violation for testing positive for drug use, one for failing to obey a probation officer's instructions, two for possessing controlled substances, one for interacting with a person engaged in criminal activity, one for drug trafficking, and one for possessing firearms.

In July 2022—based on the fentanyl pills discovered during the search of Welch's home—a federal grand jury indicted him on one count of possession with intent to distribute fentanyl in violation of 21 U.S.C. § 841(a). Welch pled guilty.

B.

In April 2023, the same district-court judge who had sentenced Welch for his 2018 conviction held a consolidated sentencing and revocation hearing for Welch's more recent charges. The court first addressed the sentence for Welch's § 841(a) conviction and heard his objections to the presentence investigation report. Welch objected that the probation officer had miscalculated the drug quantity for which he was responsible, arguing that the 23 pills found during the February 2021 traffic stop had been for his "personal use," not distribution. ECF No. 37, PageID 423. Welch explained that, eight months before the traffic stop (in July 2020), an unknown person had shot him several times, severely wounding him—both of his femurs were "shattered," and he was shot in the hip and in the knee. *Id.*, PageID 430. Welch said that he had possessed the 23 fentanyl pills for self-medication to "try to relieve his pain." *Id.*, PageID 423-24.

The government, for its part, agreed that Welch had been seriously injured and that he would have needed painkillers because of those wounds. But the government pointed to several aspects of the record to argue that the 23 pills were for distribution, not personal use. Specifically, Welch had used several drugs in the past—including oxycodone and marijuana—but he had never

tested positive for fentanyl. Those 23 pills had a street value of about $600, and Welch had about $1,000 in his possession during the traffic stop—all at a time when his only employment was a part-time job at a furniture warehouse. And Welch had recently sold fentanyl pills to a confidential informant on four occasions.

After listening to those arguments and asking follow-up questions about the extent of Welch's injuries and the treatment he received, the district court acknowledged that he had been seriously injured. The court then reasoned that, after eight months, Welch's wounds would no longer have required "very powerful painkilling medication," especially since he was a "relatively young" man. *Id.*, PageID 431-33. The court also referenced Welch's work history, and found it improbable that Welch's warehouse job would have supplied him with the $1,000 police discovered during the traffic stop. For those reasons, the district court overruled Welch's drug-quantity objection.

Welch next objected that seven of the pills included in the probation officer's drug-quantity calculation—which Welch had sold to a confidential informant in April 2021—should have been labeled as containing fentanyl instead of "fluorofentanyl," a more potent chemical. The government responded that, under either label, the drug-quantity calculation yielded the same guideline range. Welch's counsel agreed, and the court did not rule on that objection.

Welch's final objection was that the probation officer should not have recommended a two-level enhancement based on Welch having used his apartment as a drug-distribution premises. Welch pointed out that he sold most of the fentanyl pills at locations other than his apartment. He also argued that the 121 pills that police found in his apartment were not involved in the April 2021 controlled buys. Based on those facts, Welch said that his home did not "play a significant role" in his drug trafficking and that the enhancement should not apply. *Id.*, PageID 439.

In response, the government referred the court to the undisputed facts in the presentence investigation report—namely that, on three occasions, police officers had observed Welch leaving his apartment before making sales to a confidential informant. In addition, police had discovered the 121 pills in his apartment (in addition to about $1,400) "less than a month" after those controlled buys. *Id.*, PageID 440. The government added—after the court asked several questions about ordinary drug-trafficking behavior—that it was typical for drug sales to take place outside of a defendant's home, but for the drugs and cash to be stored inside of it.

After listening to those arguments and again asking more follow-up questions, the district court recited the details surrounding the April 2021 controlled buys. It then found that Welch had used his apartment "as a storage facility for the drugs" because the record showed that he would "take drugs from his residence to make deliveries" and then "bring the money back into his residence." *Id.*, PageID 445-46. The court also found that the $1,400 police discovered in Welch's apartment were the "proceeds" of his drug sales. *Id.*, PageID 446. For those reasons, the court overruled Welch's premises objection.

Having ruled on all of Welch's objections, the district court adopted the presentence investigation report and explained that Welch's guideline calculation for his § 841(a) conviction was 57 to 71 months' imprisonment, based on a total offense level 19 and a criminal history category V. (Both Welch and the government agreed that guideline calculation was correct.) The court noted that Welch's guideline range was only advisory, but that the court was required to take it into account, as well as the other sentencing factors "listed in 18 U.S.C. Section 3553, in arriving at an appropriate sentence." *Id.*, PageID 447.

The court then allowed Welch to address the § 3553(a) factors. Welch's counsel acknowledged that the court had sentenced him for his 2018 conviction and was therefore familiar

with his background. He argued for a bottom-of-the-guidelines sentence, reiterating that Welch suffered from the "residual effects from being shot" and was "suffering from pain." *Id.*, PageID 449. He also made several undeveloped arguments for leniency based on Welch's "very difficult childhood," "inability to work," and "the nature and circumstances of the offense," which were not "aggravated." *Id.*, PageID 448-49. Welch himself then explained that he had sold drugs because he was "just trying to survive." *Id.*, PageID 449.

The government responded that Welch had a history of violent offenses, including a 2014 assault on a pizza deliveryman. It said that Welch had moved on from his "violent ways" only because he had been severely injured—and that he had turned to selling drugs due to his "new physical condition." *Id.*, PageID 450. The government then asked the court to take those facts into account when arriving at "whatever sentence the Court feels is appropriate." *Id.*

At that point in the proceedings, the court began to discuss Welch's supervised-release violations. But Welch said that he had not had time to discuss the revocation petition with his attorney. Welch's counsel added that he and his client had not discussed the petition "very much," and asked for a "continuance." *Id.*, PageID 452-53. The court granted that request and continued the revocation hearing for two weeks.

The court then returned to Welch's § 841(a) sentence, stating:

> The Court has considered the nature and circumstances of the offense. The Court has considered the defendant's history and characteristics. The Court has considered the guideline range as well as the other factors listed in 18 U.S.C. Section 3553.

*Id.*, PageID 455. The court then sentenced Welch to 71 months' imprisonment and recommended that he receive substance-abuse treatment and vocational training.

The court then asked if either party had objections to its sentence. Welch answered that he objected to the "procedur[al] and the substantive reasonableness" of the sentence. *Id.*, PageID 458. The court acknowledged the objection and then adjourned the hearing.

C.

Two weeks later, the parties returned to court and Welch said that he had reviewed the revocation petition. Welch also admitted all seven violations of his supervised-release conditions. His counsel pointed out that Welch's guideline range for those violations was 18 to 24 months' imprisonment, and that the court could run that sentence either concurrently or consecutively to Welch's § 841(a) sentence. Welch's counsel argued for a bottom-of-the guidelines 18-month sentence, with nine months running concurrently to his § 841(a) sentence and nine months consecutively. Welch himself repeated his previous explanation for his violations: namely, that he had just been "trying to survive." ECF No. 66, PageID 731.

The government responded with the same arguments it had made during the § 841(a) sentencing hearing. It then said that it would "leave it up to the Court as to what the specific sentence should look like." *Id.*, PageID 732.

The court then announced its sentence, stating as follows:

> The Court having found that the defendant has violated the conditions of his supervised release, the Court therefore revokes the defendant's supervision, and the Court orders the defendant be committed to the custody of the Bureau of Prisons to be imprisoned for a term of 24 months. And this sentence shall run consecutive to his [§ 841(a) sentence].

*Id*. The court then ended the hearing without asking whether either party had objections to the sentence. This appeal followed.

II.

A.

Welch argues that both of his sentences are procedurally unreasonable because, he says, the district court did not adequately explain its reasons for either of them. We begin with Welch's 71-month sentence for the § 841(a) conviction. The government argues that we should review that sentence for plain error; Welch concedes the point. *See* Appellant's Br. at 15; *United States v. Simmons*, 587 F.3d 348, 358 (6th Cir. 2009). To be plain, an error must be obvious or clear and must affect the defendant's substantial rights and the fairness of the judicial proceedings. *United States v. Russell*, 26 F.4th 371, 376 (6th Cir. 2022).

Typically, a district court adequately explains a sentence when it addresses the relevant factors from 18 U.S.C. § 3553(a). *United States v. Solano-Rosales*, 781 F.3d 345, 351 (6th Cir. 2015). A district court need not discuss every § 3553(a) factor. *United States v. Husein*, 478 F.3d 318, 330 (6th Cir. 2007). Rather, the court's explanation should be enough to demonstrate that it has considered the parties' arguments and has a reasoned basis for its decision. *Rita v. United States*, 551 U.S. 338, 356 (2007).

Here, the district court said that it had imposed Welch's 71-month sentence after considering "the nature and circumstances of the offense," Welch's "history and characteristics," and "the guideline range as well as the other factors listed in 18 U.S.C. Section 3553." ECF No. 37, PageID 455. We have no reason to think otherwise. Indeed, during the first hearing, the court addressed in some detail three arguments involving facts relevant to those factors. Specifically, the court-initiated colloquies on the drug-quantity and drug-distribution premises objections show an engagement with Welch's guidelines-based arguments for a lower sentence. *See Rita*, 551 U.S. at 358. And the court's discussion of the § 3553(a) factors for the § 841(a) sentence is nearly

identical to one which we deemed sufficient in *United States v. Vonner*. *See* 516 F.3d 382, 386 (6th Cir. 2008) (en banc). *Vonner* controls our decision here.

The record also shows that the court considered Welch's principal argument for leniency: namely, that he remained severely injured from being shot in July 2020. The court discussed (and discounted somewhat) those injuries when determining Welch's drug quantity, and did not plainly err in not discussing them further. *See id.* at 387. And Welch's other assertions in support of leniency—namely, that he had a difficult childhood and that his offense conduct involved no "aggravating factors"—were undeveloped. *See United States v. King*, 914 F.3d 1021, 1026-27 (6th Cir. 2019). The record as a whole shows that the district court did not plainly err when it imposed Welch's 71-month sentence. *See Vonner*, 516 F.3d at 388; *United States v. Coleman*, 835 F.3d 606, 616 (6th Cir. 2016).

## B.

Welch also challenges his sentence for his supervised-release violations. The district court did not ask whether Welch had any objections to that sentence, so we review it for an abuse of discretion. *See United States v. Morris*, 71 F.4th 475, 481 (6th Cir. 2023).

As noted above, the court sentenced Welch for his supervised-release violations two weeks after it imposed his 71-month sentence on his § 841(a) conviction. At that second hearing, Welch argued that only half of his supervised-release violations sentence should run consecutively to his § 841(a) sentence. The court did not acknowledge or otherwise address that argument. Instead, without explanation, the court abruptly proceeded to sentence Welch to 24 months' imprisonment, to run consecutively to his 71-month sentence. *Cf. King*, 914 F.3d at 1025-26. Nor—contrary to the government's assertion—does the record impliedly provide any basis for the court's sentence.

Welch's sentence for his supervised-release violations was procedurally unreasonable. *See Morris*, 71 F.4th at 483.

\*     \*     \*

We affirm Welch's sentence for the § 841(a) charge, vacate his sentence for the violations of his supervised release, and remand for resentencing on those violations.